INGRAM, Justice.
This is the third lawsuit between coterminous property owners W.C. Pendley (hereinafter “Curt”) and C.B. Pendley (hereinafter “Brack”). The parties are brothers.
The first suit was decided by this Court in 1976, Pendley v. Pendley, 338 So.2d 405 (Ala.1976) (hereinafter Pendley I). Pend-ley I concerned a petition for the sale of certain land claimed by Brack for division of the proceeds, because the deed from Brack’s father that purportedly conveyed 90 acres actually conveyed only 10. Brack claimed the other 80 acres by adverse possession. The trial court in Pendley I held that Brack had acquired the homeplace and farms by adverse possession, as evidenced by his exclusive possession of the land and his “cultivating it, cutting timber from it, [and] keeping the proceeds.” He had “also *471 fenced certain portions” for more than 20 years prior to the filing of the petition. Pendley I, 338 So.2d at 406. Curt appealed. The only question on appeal in Pend-ley I was whether Brack’s adverse possession claim commenced prior to his father’s death. This Court affirmed the trial court’s holding that Brack had acquired the land by adverse possession.
Sometime in 1969, Warren G. Poe began to survey the property in order to establish the boundary between the southwest quarter and the northwest quarter of Section 19, Township 15, Section 9 West, in Walker County. Brack claimed the property in the southwest quarter of the northwest quarter, and Curt claimed the property in the northwest quarter of the southwest quarter in this particular section. Between 1969 and 1980, Poe, according to testimony in the record, located three different survey lines. Curt instituted the second suit for ejectment after the first line drawn by Poe was determined to run through Brack’s house. Curt was successful at the trial level, and Brack appealed, claiming that the issue of the boundary around the house and curtilage was res judicata. This Court, in Pendley v. Pendley, 439 So.2d 1 (Ala.1983) (hereinafter Pendley II), held that “the homeplace and curtilage were part of the contested property in the prior suit,” and it wrote: “In that case [Pendley I], the trial court held that [Brack] had gained title to the homeplace and curtilage by adverse possession. That determination is controlling in the present suit [Pendley II].” Pendley II, 439 So.2d at 3.
During the second proceeding, Brack described the southern boundary of his property past the house and curtilage as the third line drawn by Poe. After the decision of the trial court in favor of Curt was reversed by this Court in favor of Brack’s claim in Pendley II, Curt painted the trees along the third Poe line. In 1987, Brack had another survey performed, during which he walked with the surveyor to show him the location of the boundary between the two properties (hereinafter the 1987 survey line). The 1987 survey line is considerably south of the third Poe line.
Both brothers claim the property between the lines. Curt instituted this action, alleging trespass and conversion, after Brack cut timber from the disputed property and began to erect a fence along the 1987 survey line. After considering oral testimony, the trial court found that the cause was res judicata because of the previous litigation and, independent of the res judicata issue, found that Brack had title to the disputed area by adverse possession. Curt appeals.
Because this matter has now been heard three times by the trial court, we are satisfied that the trial court has taken meticulous care to end this dispute between these two brothers, which has now spanned two decades. The trial court’s final judgment addressed the pertinent aspects of this matter in a way that leaves no doubt as to the location and description of the boundary line between Brack and Curt.
The trial court considered evidence on May 29, 1990, regarding the location of the true dividing line between Brack and Curt. It found that in April 1987, Brack had a line run by a registered land surveyor. From that line, the trial court established the true boundary between the parties.
The trial court determined that Brack had
“been in exclusive, hostile, open, notorious and adverse possession of all the lands in the West ½ of Section 19, Township 15, Range 9 West, which lie north of the following described line and south of Thornton Creek, for a continuous period of time beginning in 1948 and continuing until the present time.”
The court then described and established the southern boundary of Brack’s property and the dividing line between his property to the north and Curt’s property to the south, as follows:
“Commence at the northwest corner of the northwest quarter of the southwest quarter, Section 19, Township 15 South, Range 9 West; thence on a bearing of South 87 degrees 45 minutes 16 seconds East for a distance of 256.03 feet for the point of beginning; thence on a bearing South 75 degrees 31 minutes 52 seconds *472 East a distance of 58.20 feet; thence on a bearing of South 61 degrees 44 minutes 00 seconds East a distance of 42.82 feet; thence on a bearing of South 80 degrees 38 minutes 10 seconds East a distance of 498.61 feet; thence on a bearing of South 80 degrees 31 minutes 09 seconds East a distance of 126.50 feet; thence on a bearing of [S]outh 78 degrees 42 minutes 11 seconds East a distance of 52.91 feet; thence on a bearing of South 85 degrees 17 minutes 59 seconds East a distance of 57.47 feet; thence on a bearing of South 46 degrees 39 minutes 30 seconds East a distance of 56.47 feet; thence on a bearing of South 76 degrees 10 minutes 05 seconds East for a distance of 67.18 feet; thence on a bearing of South 79 degrees 29 minutes 09 seconds East a distance of 79.11 feet; thence on a bearing [of] South 69 degrees 51 minutes 15 seconds East for a distance of 47.50 feet; thence on a bearing of South 76 degrees 40 minutes 31 seconds East a distance of 79.05 feet; thence on a bearing of South 85 degrees 18 minutes 54 seconds East a distance of 634.00 feet; thence on a bearing of North 86 degrees 06 minutes 02 seconds East a distance of 698.77 feet; thence on a bearing of North 86 degrees 06 minutes 02 seconds East a distance of 82.09 feet.”
We are satisfied that the trial court has correctly applied the law to the facts in establishing this boundary line and in adjudicating other matters in this case.
The only issue Curt raises in this appeal is whether the trial court’s ruling in favor of Brack was error under the doctrine of inconsistent positions. This Court has previously stated the doctrine of inconsistent positions as follows:
“[A] party will not be permitted to maintain inconsistent positions or to take a position in regard to a matter that is directly contrary to, or inconsistent with, one previously assumed by him, at least where he had, or was chargeable with, full knowledge of the facts and where another would be prejudiced by his action.”
Porter v. Jolly, 564 So.2d 434, 437 (Ala.1990) (citing Dominex, Inc. v. Key, 456 So.2d 1047, 1058 (Ala.1984); Brooks v. Peoples National Bank of Huntsville, 414 So.2d 917 (Ala.1982); Russell v. Russell, 404 So.2d 662 (Ala.1981)). Curt argues that Brack, in claiming the 1987 survey line as the boundary in the instant litigation, has taken a position inconsistent with his position in Pendley II. Therefore, Curt argues that Brack is estopped from claiming that the north-south boundary between their property is the line described by the 1987 survey line.
We have considered Curt’s contention, but we find that equity prevents us from holding that Brack is estopped to claim the boundary that he has claimed since 1948, with the exception of the description found in the record of Pendley II.
On August 11, 1980, shortly after the third Poe line was drawn, Brack filed a document in open court, entitled “Amendment to the Suggested Boundary Line,” which described the boundary as follows:
“For a point of beginning start at the Northwest Corner of the NW ¼ of the SW k of Section 19, Township 15, Range 9 West, in Walker County, Alabama, and run East to that certain large pine tree located on the Southeast edge of said Pendley Creek Road and approximately 245 feet West of the front porch step of C.B. Pendley’s present residence on Pendley Creek Road; and from said large pine tree run Westerly along that certain barbed wire lot fence as follows:
thence run N 89° 14'E 32.32 feet;
thence run S 79° 40'E 79.03 feet;
thence run S 47° 22'E 64.78 feet;
thence run S 88° 08'E 25.86 feet;
thence run S 79° 10'E 119.75 feet;
thence run S 71° 04'E 104.60 feet;
thence run N 86° 54'E 16.02 feet;
thence run N 50° 55'E 41.07 feet;
thence run N 5° 01' West to the East boundary line of the NW k of the SW k of Section 19, Township 15, Range 9 West, in Walker County, Alabama, as shown by that certain third survey prepared by Warren G. Poe and run on August 4, 1980, and dated May 1, 1980, *473 and proceed in a Northerly direction along said East boundary line of the NW k of the SW ⅛ to the Northeast Corner of the NW ¼ of the SW ¼, Section 19, Township 15, Range 9 West, as shown in that certain survey mentioned herein.”
(Emphasis added.)
Brack contends that Curt’s argument concerning the inconsistent boundary lines is based upon an unintentional error by Curt’s attorney in interpreting the descriptions. Otherwise, Brack failed to address the inconsistency of the descriptions in his brief on this appeal. He contends that the trial court’s ruling was correct on either of two grounds: (1) the boundary line was established by res judicata; or (2) the boundary line was established by adverse possession.
This Court has established several limitations regarding the assertion of the doctrine of inconsistent positions. The pri- or position must have been asserted successfully and a judgment rendered in favor of the party against whom the doctrine is asserted. Porter, 564 So.2d at 437; see also Edwards v. McCord, 461 So.2d 1319 (Ala.1984). We interpret this requirement to be necessary to establish that the party asserting the doctrine has a right to rely upon the prior inconsistent position in subsequent litigation. Also, the positions asserted must be clearly inconsistent. Porter, 564 So.2d at 437. The parties and the questions must be the same, id.; this requirement is similar to the requirement of mutuality in collateral estoppel and res ju-dicata. Also, the party claiming estoppel must have been misled and/or must have changed his position in reliance on the prior inconsistent position. Id. (citing First National Bank of Mobile v. Burch, 237 Ala. 680, 686, 188 So. 859, 863 (1939)). Further, it must be unjust to one party to permit the other to change positions. Id.; see also Russell v. Russell, 404 So.2d 662, 665 (Ala.1981).
Because the doctrine of inconsistent positions is a form of estoppel, and estoppel cannot be used to create a primary right or a cause of action, B.F. Goodrich Co. v. Parker, 282 Ala. 151, 209 So.2d 647 (1967), we hold that Curt cannot maintain this action alleging trespass and conversion based upon his claim to the disputed property that arose from Brack’s prior inconsistent description of the property. The evidence shows that, after this Court’s decision in Pendley II, Curt painted the trees along the third Poe line. Nothing more is in the record to indicate that anything other than Brack’s unexplained adoption of the third Poe line gave Curt the right to claim the property north of the 1987 survey line and south of the third Poe line.
This Court has held that estoppel cannot be used as an affirmative device to create a contract where no contract otherwise exists. Merchants National Bank of Mobile v. Steiner, 404 So.2d 14 (Ala.1981) (contract for the sale of land); Bates v. Jim Walter Resources, Inc., 418 So.2d 903 (Ala.1982) (employment contract). We now hold that in this case the doctrine of inconsistent positions does not create a primary right in Curt to possess and own the property as described in Pendley II, when the only evidence of the right to claim the property is the prior inconsistent statement and the great weight of the evidence is in favor of the description as it was established by the trial court in the instant case.
The trial court, after a bench trial at which the court considered the oral testimony of several witnesses, established the boundary between Curt and Brack as the line set by the 1987 survey. The trial court found that Brack had acquired. the land north of that line by adverse possession that began in 1948. We affirm the trial court’s finding that Brack acquired the land by adverse possession, and we affirm the judgment establishing the boundary line as follows:
“Commence at the northwest corner of the northwest quarter of the southwest quarter, Section 19, Township 15 South, Range 9 West; thence on a bearing of South 87 degrees 45 minutes 16 seconds East for a distance of 256.03 feet for the point of beginning; thence on a bearing South 75 degrees 31 minutes 52 seconds East a distance of 58.20 feet; thence on a *474 bearing of South 61 degrees 44 minutes 00 seconds East a distance of 42.82 feet; thence on a bearing of South 80 degrees 38 minutes 10 seconds East a distance of 498.61 feet; thence on a bearing of South 80 degrees 31 minutes 09 seconds East a distance of 126.50 feet; thence on a bearing of [Sjouth 78 degrees 42 minutes 11 seconds East a distance of 52.91 feet; thence on a bearing of South 85 degrees 17 minutes 59 seconds East a distance of 57.47 feet; thence on a bearing of South 46 degrees 39 minutes 30 seconds East a distance of 56.47 feet; thence on a bearing of South 76 degrees 10 minutes 05 seconds East for a distance of 67.18 feet; thence on a bearing of South 79 degrees 29 minutes 09 seconds East a distance of 79.11 feet; thence on a bearing [of] South 69 degrees 51 minutes 15 seconds East for a distance of 47.50 feet; thence on a bearing of South 76 degrees 40 minutes 31 seconds East a distance of 79.05 feet; thence on a bearing of South 85 degrees 18 minutes 54 seconds East a distance of 634.00 feet; thence on a bearing of North 86 degrees 06 minutes 02 seconds East a distance of 698.77 feet; thence on a bearing of North 86 degrees 06 minutes 02 seconds East a distance of 82.09 feet.”
AFFIRMED.
HORNSBY, C.J., and ALMON, ADAMS and STEAGALL, JJ., concur.