This appeal arises out of an unfortunate set of circumstances concerning a promise of marriage. Ella S. Porter appeals from a summary judgment in favor of Donald G. Jolly on her counterclaim for damages. We reverse and remand.
Ella S. Porter and Donald G. Jolly began living together in August 1985, after her divorce from her former husband. They lived together in Jolly's apartment. Porter was employed, but Jolly was not, and his only source of income was a disability check he received monthly.
Porter and Jolly lived together for over two and one-half years; on February 3, 1988, Porter filed a complaint for divorce from Jolly, alleging that a common law marriage existed between the two. Porter attached to her complaint a sworn affidavit that stated, in part:
 "My name is Ella S. Porter Jolly. I am now married to Donald G. Jolly. During the years I lived with my husband I made the following contributions to our checking account:
 "$65,000 from the proceeds of the sale of a house I owned prior to this marriage, "$8,232 from the settlement of a case prior to this marriage
 "and my entire paycheck each week since August, 1985.
 "I have recently learned that my husband has removed my name from the AmSouth account with my funds. I am worried that he will withdraw and spend *Page 436 
or waste the funds to keep them away from me. He has threatened to do so."
Service was never obtained on Jolly, and, thus, he never entered an appearance in the case.
On March 14, 1988, Porter executed the following document, drafted by Jolly and addressed "To Whom it May Concern":
 "Please be advised, that I, Ella S. Porter, do hereby make the following voluntary statement to all persons who have a need to know my personal and professional business.
 "Stated, that on the morning of Friday, March 11, 1988, I personally notified my Attorney-at-Law, Rebecca Bozeman, to immediately stop, cancel and desist from any and all legal actions that I initiated against one Donald G. Jolly on January 26, 1988. It was further agreed by Ms. Bozeman that a letter to this effect would be forthcoming to me, with a copy to Mr. Donald G. Jolly, so stating my instructions in these matters.
 "Please be further advised that as of this date, that Mr. Donald G. Jolly has fully met any and all financial obligations to me which may have existed in the past, and further, that Mr. Donald G. Jolly
is in no way financially obligated to me at this time. Our plans, Mr. Jolly's and mine, are to be finally married in the near future, with all that type relationship and partnership entails.
 "Finally, be further advised that I, Ella S. Porter, do hereby withdraw all legal actions against Mr. Donald G. Jolly, and be it further stipulated, that I, Ella S. Porter, will not initiate any future legal actions against Mr. Donald G. Jolly."
Porter argues that Jolly forced her to sign the document under duress, without benefit of counsel, and by the use of undue influence. She claims that she executed the document only upon the promise that Jolly would marry her.
On April 4, 1988, after signing the "To Whom It May Concern" document, Porter's complaint for divorce was dismissed upon her own motion. Porter argues that her dismissal of the complaint was premised upon Jolly's promise to marry her and that her execution of the document quoted above had been in response to that promise.
One month later, on May 4, 1988, Jolly filed an action for declaratory judgment, seeking a determination that no common law marriage existed between himself and Porter. Porter counterclaimed for damages, contending that Jolly had taken funds totalling over $100,000 from her. On September 30, 1988, Porter amended her counterclaim and asserted claims alleging conversion, fraud, and deceit. Porter argued that the funds delivered to Jolly were intended to be placed in a bank account, with the two of them being joint tenants, and were to be used as a "nest egg" for their future support as husband and wife. Porter contends that Jolly instead deposited the funds into a joint account with his son, cutting her off from the control and enjoyment of her funds. Jolly admitted receipt of the money, but contended that they were "gifts" and that the March 14, 1988, document constituted a release of any and all financial obligations that he might owe her.
On October 18, 1988, the trial court entered a summary judgment on Jolly's claim for a declaratory judgment holding that no common law marriage existed between the parties. Jolly later filed a motion for summary judgment on Porter's counterclaim. He argued that the position by Porter in her counterclaim was contrary to the affidavit she had executed on March 14, 1988, and that she was essentially reasserting the same claims she had presented in her original action for divorce. On March 28, 1989, the trial court entered a summary judgment on Porter's counterclaim. That judgment stated in part:
 "The Court notes that the Defendant has been represented by able counsel throughout both cases. The claims set out in the counterclaim, as amended, are the identical claims filed in the prior action between the same parties. The dismissal of the prior action was based upon the Defendant's statement that the Plaintiff had fully met all financial obligations to the Defendant and that the Plaintiff was in no way financially obligated to *Page 437 
the Defendant. It is the opinion of the Court that the Defendant may not now take a contrary position. Thus, the Plaintiff's motion for summary judgment is due to be granted."
The law in Alabama is well settled that a party will not be permitted to maintain inconsistent positions or to take a position in regard to a matter that is directly contrary to, or inconsistent with, one previously assumed by him, at least where he had, or was chargeable with, full knowledge of the facts and where another would be prejudiced by his action.Dominex, Inc. v. Key, 456 So.2d 1047, 1058 (Ala. 1984); Brooksv. Peoples National Bank of Huntsville, 414 So.2d 917 (Ala. 1982); Russell v. Russell, 404 So.2d 662 (Ala. 1981). However, there are a number of limitations that should be placed upon this "doctrine of inconsistent positions," which is in the nature of an estoppel:
 "A number of limitations upon, or qualifications of, the rule against assuming inconsistent positions in judicial proceedings, have been laid down. Thus, the following have been enumerated as essentials to the establishment of an estoppel under the rule that a position taken in an earlier action estops the one taking such position from assuming an inconsistent position in a later action: (1) The inconsistent position first asserted must have been successfully maintained; (2) a judgment must have been rendered; (3) the positions must be clearly inconsistent; (4) the parties and questions must be the same; (5) the party claiming estoppel must have been misled and have changed his position; and (6) it must appear unjust to one party to permit the other to change."
28 Am.Jur.2d § 70 Estoppel and Waiver (1966).
Thus, a party may not appropriately assert the defense of judicial estoppel or a prior inconsistent position unless it is demonstrated that the party against whom the estoppel is sought to be imposed actually procured a judgment in his favor as a result of the inconsistent position taken by him in the prior proceeding. Ellis v. Arkansas Louisiana Gas Co., 609 F.2d 436
(10th Cir. 1979), cert. denied 445 U.S. 964, 100 S.Ct. 1653,64 L.Ed.2d 239 (1980); Chemical Bank v. Aetna Insurance Co.,99 Misc.2d 803, 417 N.Y.S.2d 382 (1979). In the instant case, the prior action did not go to judgment. Porter voluntarily dismissed the case before Jolly had even entered an appearance, presumably based upon the March 14, 1988, document and Jolly's alleged promise to marry her.
Moreover, it is also essential that the party claiming the estoppel be misled by the conduct of the party against whom the doctrine is invoked and in consequence change his position to his prejudice. First National Bank of Mobile v. Burch, 237 Ala. 680,188 So. 859 (1939). "[T]he party claiming the estoppel must have been ignorant of the real facts, and, in reliance on the statements or admissions, he must have changed his position and sustained prejudice by reason thereof." First National Bankof Mobile, 237 Ala. at 686, 188 So. at 863. We cannot find in the record any evidence to indicate that Jolly was misled by Porter's conduct. Indeed, the facts seem to be such that Porter
was the one who was misled and was prejudiced as a result of the alleged change of position.
The "inconsistent position" alleged by Jolly to have been taken by Porter in the prior proceeding arose out of the "To Whom It May Concern" document, wherein Porter is said to have released all financial obligations owed to her by Jolly, in consideration of his promise to marry her. Jolly relies on the case of Dominex, Inc. v. Key, supra, to support his position that Porter has asserted an "inconsistent position." However, upon a review of the facts in Dominex, Inc., we note that it was held that nothing in the prior lawsuit operated as an estoppel or waiver. To support its rationale, the Court relied on LeFurgey v. Beck, 244 Ala. 281, 13 So.2d 179 (1943):
 "Inconsistent positions in different litigations, where the party failed of benefit from the former position, through mistake of fact, or mistake as to rights of property in certain cases, do not ordinarily estop the party from asserting the true facts. This is quite different, in principle, from setting up a fraudulent *Page 438 
claim on simulated facts, burdening the other party with long delay in the enjoyment of property rights, admittedly his in that proceeding, but for the fraudulent claim asserted, and the burden of protracted litigation to defeat the fraudulent claim, to be followed by suit in equity founded on another and conflicting statement of facts, all known to complainant from the beginning."
Dominex, Inc., 456 So.2d at 1059, quoting LeFurgey v. Beck,244 Ala. at 284, 13 So.2d at 182. Applying the reasoning ofLeFurgey, as adopted in Dominex, Inc., to the facts of the instant case, we conclude that clearly Porter has failed to benefit from any position she may have taken in her previous action.
In light of the foregoing, we hold that the trial court erred in entering the summary judgment against Porter's counterclaim alleging fraud, deceit, and conversion based upon the premise that she had taken a contrary position in her previous action.[1]
Therefore, the summary judgment in favor of Jolly on Porter's counterclaim for damages was in error.
REVERSED AND REMANDED.
HORNSBY, C.J., and MADDOX, JONES, SHORES, HOUSTON, STEAGALL and KENNEDY, JJ., concur.
[1] Porter characterizes the "To Whom It May Concern" document as an "antenuptial agreement" while Jolly characterizes it as a "release." We would note that in all likelihood it is not effective as either, because the document should fail for lack of consideration.