David Turk was injured when he was hit by a piece of metal that had fallen from a crane at the Alabama State Docks in Mobile ("the State Docks").[1] At the time of his accident, Turk, a longshoreman for Atlantic Gulf Stevedores ("Atlantic 
Gulf"), was working as a member of a "gang" unloading aluminum ingots from the ship. Atlantic Gulf had leased the crane from the State Docks pursuant to a written lease agreement. Fred C. Daniels, Audie L. O'Farrell, J.C. Lundy, E.G. Browning, Clarence Sheldt, W.M. McCrary, A.B. McKenzie, and William Moody were all employed at the State Docks at the time of Turk's accident and had various responsibilities in connection with the unloading of the ship. (These employees are hereinafter collectively referred to as "the State Docks employees.") Turk sued the State Docks employees and Aetna Casualty Surety Company ("Aetna"), the insurance carrier for the State Docks, seeking damages under theories of negligence and wantonness. Turk sued Aetna under Ala. Code 1975, § 33-1-25, which authorizes a direct action against the insurance carrier of the State Docks.[2] Aetna and the State Docks employees filed a third-party complaint against Atlantic Gulf, seeking indemnity based on the lease agreement between the State Docks and Atlantic Gulf.[3] Because of the insolvency of Atlantic 
Gulf's insurance carrier, Midland Insurance Company, and while the claims of Turk, Aetna, and the State Docks employees were pending, the Alabama Insurance Guaranty Association ("the Association") filed a declaratory judgment action against Turk, Aetna, the State Docks employees, and Atlantic Gulf, seeking a ruling that it was not obligated under the Midland policy to defend Atlantic Gulf or to otherwise provide coverage in connection with the indemnity claims brought against Atlantic 
Gulf.[4] *Page 207 
The trial court stayed further proceedings in the original suit until a determination of the Association's obligations to Atlantic Gulf under the Midland policy could be made. Thereafter, the trial court entered a summary judgment for Atlantic Gulf in the declaratory judgment action, ruling that the indemnity claims filed against Atlantic Gulf were "covered" claims under the Alabama Insurance Guaranty Association Act ("the Act"). Atlantic Gulf prevailed in the declaratory judgment action, at least in part because it took the position that Aetna was not an "insurer" within the meaning of § 27-42-5.[5] The Association did not appeal from the judgment entered in the declaratory judgment action. Subsequently, Aetna and the State Docks employees settled with Turk, but continued to prosecute their indemnity claims against Atlantic Gulf. Atlantic Gulf moved for a summary judgment on the indemnity claims, arguing that the State Docks employees had suffered no monetary loss that would support their claims and that Aetna's claim was barred because Aetna was an "insurer" within the meaning of § 27-42-5.[6] The trial court granted Atlantic Gulf's motion, and Aetna and the State Docks employees appealed. We reverse and remand.
The summary judgment was proper if there was no genuine issue of material fact and Atlantic Gulf was entitled to a judgment as a matter of law. Rule 56, A.R.Civ.P. The burden was on Atlantic Gulf to make a prima facie showing that no genuine issue of material fact existed and that it was entitled to a judgment as a matter of law. If that showing was made, then the burden shifted to Aetna and the State Docks employees to present evidence creating a genuine issue of material fact, so as to avoid the entry of a judgment against them. In determining whether there was a genuine issue of material fact, we must view the evidence in the light most favorable to Aetna and the State Docks employees and we must resolve all reasonable doubts against Atlantic Gulf. Leighton AvenueOffice Plaza, Ltd. v. Campbell, 584 So.2d 1340 (Ala. 1991). Because this case was pending on June 11, 1987, the applicable standard of review is the "scintilla of evidence" rule. Ala. Code 1975, § 12-21-12.
The dispositive issues in this case are as follows:
 1. Whether the summary judgment for Atlantic 
Gulf was proper with respect to the claims of the State Docks employees seeking indemnity for attorney fees allegedly expended in connection with defending Turk's suit; and,
 2. Whether Atlantic Gulf was estopped from taking the position in its motion for summary judgment against Aetna that Aetna was an insurer within the meaning of the Act, when in the declaratory judgment action it had taken a contrary position in its motion for summary judgment against the Association.
Citing King v. Capitol Amusement Co., 222 Ala. 115,130 So. 799 (1930), Atlantic Gulf contends that the indemnity claims of the State Docks employees were without merit, because, it argues, none of them was required to pay any attorney fees in connection with defending Turk's suit. The State Docks employees concede that Aetna bore the entire financial burden of the settlement with Turk; however, they argue that there are still questions to be resolved as to which of them had to pay attorney fees, as well as questions as to the amount that had to be paid. It may be true, as Atlantic Gulf contends, that *Page 208 
Aetna assumed full financial responsibility for the defense of the State Docks employees. However, the record, confusing as it is, does indicate that the State Docks employees were represented at various stages of the litigation by attorneys who apparently were not hired by Aetna. It is certainly reasonable to assume that those attorneys charged for their respective services. Atlantic Gulf correctly points out, and again the employees concede, that there is no evidence in the record showing that the employees actually paid any attorney fees in connection with their defense of Turk's claim. The State Docks employees correctly point out, however, that Atlantic Gulf did not make a prima facie showing that they had paid no attorney fees in connection with the litigation. Therefore, because Atlantic Gulf failed to make this prima facie showing, the burden never shifted to the employees to show that they had paid attorney fees in connection with defending Turk's suit. With the case in this posture (i.e., with the State Docks employees claiming indemnity for attorney fees paid in connection with defending Turk's suit, and no evidence showing that they paid no attorney fees), we have no alternative under our standard of review but to reverse the summary judgment with respect to the indemnity claims of the State Docks employees and remand the case for a determination as to whether any of the employees have an indemnity claim against Atlantic Gulf for attorney fees allegedly paid in connection with defending Turk's suit.
With regard to the second issue, Aetna contends that Atlantic Gulf was estopped under the "doctrine of inconsistent positions" from taking the position that it was an "insurer" within the meaning of § 27-42-5, and, thus, that the Act barred its indemnity claim. The thrust of Aetna's argument is that the issue concerning whether it was an "insurer" within the meaning of § 27-42-5 was fully adjudicated in the declaratory judgment action and, therefore, that Atlantic Gulf was barred from reli0tigating that issue by taking a position contrary to the one that it had previously taken in the declaratory judgment action, in an attempt to defeat the indemnity claim. Aetna argues that it entered into a good faith settlement with Turk after it had been determined in the declaratory judgment action that its indemnity claim against Atlantic Gulf was a "covered" claim under the Act, and that it was basically unfair for the trial court to allow Atlantic Gulf to change its legal position in an attempt to avoid liability under its indemnity agreement. We agree.
Recently, this Court, in Porter v. Jolly, 564 So.2d 434, 437
(Ala. 1990), discussed the "doctrine of inconsistent positions":
 "The law in Alabama is well settled that a party will not be permitted to maintain inconsistent positions or to take a position in regard to a matter that is directly contrary to, or inconsistent with, one previously assumed by him, at least where he had, or was chargeable with, full knowledge of the facts and where another would be prejudiced by his action. Dominex, Inc. v. Key, 456 So.2d 1047, 1058 (Ala. 1984); Brooks v. Peoples National Bank of Huntsville, 414 So.2d 917
(Ala. 1982); Russell v. Russell, 404 So.2d 662
(Ala. 1981). However, there are a number of limitations that should be placed upon this 'doctrine of inconsistent positions,' which is in the nature of an estoppel:
 " 'A number of limitations upon, or qualifications of, the rule against assuming inconsistent positions in judicial proceedings, have been laid down. Thus, the following have been enumerated as essentials to the establishment of an estoppel under the rule that a position taken in an earlier action estops the one taking such position from assuming an inconsistent position in a later action: (1) The inconsistent position first asserted must have been successfully maintained; (2) a judgment must have been rendered; (3) the positions must be clearly inconsistent; (4) the parties and questions must be the same; (5) the party claiming estoppel must have been misled and have changed his position; and (6) it must appear unjust to one party to permit the other to change.' *Page 209 
"28 Am.Jur.2d § 70 Estoppel and Waiver (1966)."
In the present case, Atlantic Gulf was successful in securing a judgment against the Association in the declaratory judgment action establishing that Aetna's indemnity claim was a "covered" claim under the Act. It accomplished this, at least in part by successfully arguing that Aetna was not an "insurer" within the meaning of § 27-42-5. As previously noted, no appeal was taken from that judgment. In an attempt to defend against Aetna's indemnity claim, however, Atlantic Gulf changed its position completely and argued that Aetna was an "insurer" within the meaning of § 27-42-5 and that the Act barred Aetna's indemnity claim. The judgment that was entered in the declaratory judgment action established, insofar as that case was concerned, that Aetna was not an "insurer" within the meaning of the Act. See Blumberg v. Touche Ross Co.,514 So.2d 922 (Ala. 1987) (discussing the doctrine of "the law of the case"). Therefore, if Aetna changed its position to its detriment in reliance on the judgment that had been entered in the declaratory judgment action, and on the legal position that had been taken by Atlantic Gulf in that action, then Atlantic Gulf was barred under the doctrine of inconsistent positions from changing its legal position in an attempt to defeat Aetna's indemnity claim. The record indicates that Aetna settled with Turk after the judgment was entered in the declaratory judgment action, but before Atlantic Gulf changed its position and moved for a summary judgment on Aetna's indemnity claim. It would certainly be reasonable to assume that Aetna, at least in part, was motivated to settle with Turk by the judgment that had been entered for Atlantic Gulf in the declaratory judgment action and by the legal position that Atlantic Gulf had taken in that action. At the very least, there appears to be a fact question as to whether Aetna's settlement with Turk was influenced by the position that Atlantic Gulf had taken in the declaratory judgment action. Accordingly, under the circumstances of this case, and in accordance with our standard of review, we hold that the summary judgment for Atlantic Gulf on Aetna's indemnity claim was improper.
In light of our resolution of the second issue, we find it unnecessary to consider the other issues raised by Aetna.
For the foregoing reasons, the summary judgment for Atlantic Gulf with respect to the indemnity claims of the State Docks employees and Aetna is reversed and the case is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
HORNSBY, C.J., and SHORES and KENNEDY, JJ., concur.
MADDOX, J., concurs in the result.
[1] The State Docks, an agency of the State of Alabama, owns and operates the general cargo docking facility at the Port of Mobile.
[2] Section 33-1-25 was enacted to ameliorate the hardships and inequities caused by the exemption of the State Docks from civil liability under the doctrine of sovereign immunity. SeeCentral Stikstof Verkoopkanter, N.V. v. Walsh Stevedoring Co.,380 F.2d 523 (5th Cir. 1967); Benniefield v. Valley BargeLines, 472 F. Supp. 314 (S.D.Ala. 1979). When an insurer is sued pursuant to a direct action statute, as Aetna was here, it legally stands in the shoes of the insured. Aetna Casualty Surety Co. v. Cooper Stevedoring Co., 504 So.2d 215 (Ala. 1986), cert. denied, 483 U.S. 1022, 107 S.Ct. 3268,97 L.Ed.2d 767 (1987).
[3] The lease between the State Docks and Atlantic Gulf contained a specific indemnity clause and also incorporated by reference the terms of the Alabama State Docks Department Tariff No. 1-C, which provided that use of the State Docks' facility amounted to consent to the Tariff's terms. Those terms included an indemnity and hold harmless provision in favor of the State Docks and a provision requiring stevedores to maintain insurance naming the State Docks as an additional insured.
[4] The Association was created under the provisions of Ala. Code 1975, § 27-42-1 et seq., the Alabama Insurance Guaranty Association Act. The purpose of the Act was to "provide a mechanism for the payment of covered claims under certain insurance policies, to avoid excessive delay in payments and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer, to assist in the detection and prevention of insurer insolvencies and to provide an association to assess the cost of such protection among insurers." § 27-42-2.
[5] Section 27-42-5 provides that a "covered" claim does not include an amount due any "reinsurer, insurer, insurance pool, or underwriting association, as subrogation recoveries or otherwise." Atlantic Gulf argued that Aetna had filed its third-party indemnity claim in the capacity of a "primary obligor" under the direct action statute.
[6] Atlantic Gulf argued that the Act not only barred an insurer from making a claim against the Association, but also barred an insurer from making a claim against the holder of the worthless policy.