883 So.2d 1236 (2003)
Ex parte FIRST ALABAMA BANK, now known as Regions Bank.
(In re Donald J. Vincent
v.
First Alabama Bank and Betty Vincent).
1020855.
Supreme Court of Alabama.
September 12, 2003.
As Modified on Denial of Rehearing November 21, 2003.
*1238 R. Cooper Shattuck and Jane L. Calamusa of Rosen, Cook, Sledge, Davis, Cade & Shattuck, P.A., Tuscaloosa, for petitioner.
William J. Baxley and David McKnight of Baxley, Dillard, Dauphin & McKnight, Birmingham, for respondent.
LYONS, Justice.
First Alabama Bank, now known as Regions Bank ("the Bank"), petitions for certiorari review of the Court of Civil Appeals' opinion reversing the trial court's summary judgment in its favor. We reverse the judgment of the Court of Civil Appeals.

I. Facts and Procedural History

Including today's opinion, this litigation has generated five appellate opinions. The most recent opinion of the Court of Civil Appeals, Vincent v. First Alabama Bank, 883 So.2d 1231 (Ala.Civ.App.2002) ("Vincent IV"), quotes Vincent v. First Alabama Bank, 770 So.2d 86 (Ala.Civ.App.1998) ("Vincent I"), and describes the procedural history as follows:
"`Donald Vincent sued [the Bank] and Betty Jo Vincent, his wife, alleging negligence, breach of contract, conversion, and wantonness claims. Vincent alleged that he had rented two safe deposit boxes from the bank and had placed $500,000 in cash and certificates of deposit in the boxes. However, he claims that when he opened the boxes on November 21, 1991, the boxes were empty. Vincent alleges that Betty Jo Vincent, his wife, gained unauthorized access to the boxes and removed the money. The bank filed a cross-claim against the wife.
"`A jury returned a verdict in favor of Vincent against the bank on the negligence claims and against the wife on the conversion claim, awarding him $10,000 in damages. The jury found in favor of the bank on Vincent's breach of contract and wantonness claims. The jury found in favor of the bank on its cross-claim against the wife and awarded it $10,000. Thereafter, Vincent filed a motion for a new trial and the bank renewed its earlier motion for a judgment as a matter of law. The trial court denied both motions. Vincent and the bank appealed.'
"[Vincent v. First Alabama Bank, 770 So.2d 86, 88 (Ala.Civ.App.1998) (`Vincent I').] In Vincent I, this court affirmed the trial court's denial of Vincent's new-trial motion, which had asserted that that court had improperly refused to admit certain evidence; we also affirmed the trial court's denial of the bank's renewed motion for a [judgment as a matter of law] (see Rule 50(b), Ala. R. Civ. P.), which had asserted, among other things, that a release appearing on the form that Vincent had signed when he closed the safety-deposit boxes barred his claims against the bank as a matter of law.
"Vincent subsequently sought certiorari review of our affirmance in Vincent I of the trial court's denial of his new-trial motion. In Ex parte Vincent, 770 So.2d 92 (Ala.1999) (`Vincent II'), the Alabama Supreme Court reversed this court's judgment affirming of the trial court's denial of Vincent's new-trial motion, *1239 concluding that a ledger that had been kept by Betty Vincent should have been admitted into evidence. 770 So.2d at 96. The Supreme Court remanded the cause to this court `for further proceedings consistent with [its] opinion.' [770 So.2d at 96.] On remand from the Supreme Court, this court reversed the trial court's order denying Vincent's new-trial motion, stating that the cause was `remanded for a new trial.' Vincent v. First Alabama Bank, 770 So.2d 97 (Ala.Civ.App.2000) (`Vincent III').
"In January 2001, after the cause had been remanded to the trial court for a new trial, the circuit judge who had presided over the original trial left office. In August 2001, the bank filed a motion for a summary judgment. As one of its bases for that motion, the bank asserted that Vincent had released the bank from liability, citing the release addressed by this court in Vincent I. The bank also asserted that Vincent's claims were barred by the doctrine of judicial estoppel because he had, according to the bank, represented under oath in previous bankruptcy proceedings and in divorce litigation with a former wife, Billie Vincent, that he did not have the $500,000 that he claimed Betty Vincent had removed from the safety-deposit boxes at the bank. The bank's summary-judgment motion was supported by, among other things, excerpts from Vincent's transcribed deposition testimony and from the transcript of his testimony at the original trial. Vincent responded by asserting, among other things, that a summary judgment based upon the release would be inconsistent with our holding in Vincent I, that a defense based upon judicial estoppel could not properly be asserted at that time, and that judicial estoppel was inapplicable under the facts of the case.
"In September 2001, the successor circuit judge entered a summary judgment in favor of the bank and Betty Vincent. In its summary-judgment order, the trial court relied primarily upon the doctrine of judicial estoppel, although it also cited the release as an alternative ground. Vincent appealed to the Alabama Supreme Court, filing two notices of appeal, one as to the bank and one as to Betty Vincent; that court transferred the appeals to this court, pursuant to § 12-2-7(6), Ala.Code 1975."
Vincent IV, 883 So.2d at 1232-33 (footnote omitted).
The Court of Civil Appeals in Vincent IV reversed the trial court's summary judgment in favor of the Bank and Betty Jo Vincent and remanded the case for further proceedings. The Bank petitioned for certiorari challenging the failure of the Court of Civil Appeals in Vincent IV to uphold the trial court's summary judgment on the basis of the release and the doctrine of judicial estoppel. We granted the petition only as to the issue whether the doctrine of judicial estoppel entitles the Bank to a summary judgment.

II. Standard of Review

Our review of a summary judgment is de novo. "A motion for summary judgment is granted only when the evidence demonstrates that `there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' Rule 56(c), Ala. R. Civ. P." Reichert v. City of Mobile, 776 So.2d 761, 764 (Ala.2000). We apply "the same standard as that of the trial court in determining whether the evidence before the court made out a genuine issue of material fact." Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala.1988); System Dynamics Int'l, Inc. v. Boykin, 683 So.2d 419, 420 (Ala.1996). In order to defeat a properly supported motion for a summary *1240 judgment, the nonmoving party must present substantial evidence that creates a genuine issue of material fact. "[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).

III. Analysis

The Bank maintains that it is entitled to a summary judgment based upon the doctrine of judicial estoppel. Vincent contends that the Bank waived its right to assert the defense of judicial estoppel and that the Bank cannot satisfy the requirements of privity and reliance essential to the application of the doctrine of judicial estoppel.

A. Waiver

Vincent argues in his brief that the Bank waived its right to assert the defense of judicial estoppel "by allowing time and litigation expenses to accrue for eight years before it decided to advance this defense" in its August 2001 motion for a summary judgment. Vincent concedes that "the Bank generally asserted the defense of `estoppel' in its answer filed on May 4, 1994," but it argues that it was not until the August 2001 motion for a summary judgment that "the Bank took any action to buttress the estoppel allegation or to even assert the more specific theory of judicial estoppel."
This argument is without merit. The Bank pleaded "waiver and estoppel" in its original answer filed in May 1994. While this answer did not specify that the Bank was pleading judicial estoppel as a defense, it was sufficient to preserve the Bank's right to assert that defense. In addition, the remand of this case ordered by the Court of Civil Appeals in Vincent v. First Alabama Bank, 770 So.2d 97 (Ala.Civ.App.2000) ("Vincent III") did not limit the proceedings of the trial court except as indicated by Vincent I and Ex parte Vincent, 770 So.2d 92 (Ala.1999) ("Vincent II"). See Vincent I, 770 So.2d 92 (which did not limit the new trial to specific issues); see also Vincent II, 770 So.2d at 97. As the Court of Civil Appeals stated in its review of this issue:
"The bank asserted estoppel as a defense in its answer, and the trial court, in the exercise of sound judicial discretion, was authorized to permit the bank to argue that Vincent's claims were barred by the doctrine of judicial estoppel. See Federal Land Bank of New Orleans v. First Nat'l Bank of Scottsboro, 237 Ala. 84, 185 So. 414, 417 (1938); see also Stover v. Alabama Farm Bureau Ins. Co., 467 So.2d 251 (Ala.1985)."
Vincent IV, 883 So.2d at 1234-35.

B. Availability of the Defense of Judicial Estoppel

In evaluating the Bank's judicial-estoppel defense, the Court of Civil Appeals recognized that Vincent had admitted that he testified in a 1982 bankruptcy proceeding and in a 1985 divorce action involving a previous wife that he did not have the $500,000 he has alleged in the instant proceeding was in his safe-deposit box. The Court of Civil Appeals stated:
"Specifically, Vincent did not report $500,000 in cash and cashier's checks to the bankruptcy court, but concealed that money from that court and from his creditors and lied during a creditors meeting in that case because he wanted to retain those funds after the conclusion of the bankruptcy proceedings. Moreover, Vincent apparently informed Billie Vincent of his intent to defraud the bankruptcy court, but later, under oath in the subsequent divorce proceedings, *1241 denied having had that money and having had a safety-deposit box. Vincent's position in this litigation with the bank is apparently in direct opposition to the positions he took in the bankruptcy proceedings and in his divorce litigation with Billie Vincent and arguably casts severe doubt upon his credibility."
Vincent IV, 883 So.2d at 1235.
The Bank argues that the Court of Civil Appeals incorrectly applied the law of judicial estoppel in holding that Vincent is not judicially estopped from bringing his claims against the Bank. "The doctrine of judicial estoppel `applies to preclude a party from assuming a position in a legal proceeding inconsistent with one previously asserted. Judicial estoppel looks to the connection between the litigant and the judicial system[,] while equitable estoppel focuses on the relationship between the parties to the prior litigation.'" Jinright v. Paulk, 758 So.2d 553, 555 (Ala.2000) (quoting Selma Foundry & Supply Co. v. Peoples Bank & Trust Co., 598 So.2d 844, 846 (Ala.1992), quoting in turn Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414 (3d Cir.1988)).
In reversing the trial court's summary judgment in favor of the Bank and Betty Jo Vincent, the Court of Civil Appeals relied on our decision in Jinright. In Jinright we examined whether debtors in a Chapter 13 bankruptcy proceeding, who failed to list as an asset their potential tort and/or contract claims against Dennis Paulk and Option Builders, Inc., were judicially estopped from later asserting claims against Paulk and Option Builders. In examining this issue, we reviewed the law of judicial estoppel and stated:
"`"[T]he following have been enumerated as essentials to the establishment of an estoppel under the rule that a position taken in an earlier action estops the one taking such position from assuming an inconsistent position in a later action: (1) The inconsistent position first asserted must have been successfully maintained; (2) a judgment must have been rendered; (3) the positions must be clearly inconsistent; (4) the parties and questions must be the same; (5) the party claiming estoppel must have been misled and have changed his position; and (6) it must appear unjust to one party to permit the other to change."'
"28 Am.Jur.2d § 70 Estoppel and Waiver (1966).... Thus, a party may not claim the benefit of the doctrine of judicial estoppel unless the party can demonstrate that the party against whom the estoppel is sought procured a judgment in its favor as a result of the inconsistent position taken in the prior proceeding. Moreover, the party claiming the estoppel must have been misled by the conduct of the party against whom the estoppel is sought, and consequently changed its position to its prejudice."
758 So.2d at 555.
We further stated in Jinright that the purpose of the doctrine of judicial estoppel "will be frustrated if defendants are allowed to use this doctrine to their advantage at the expense of plaintiffs with valid claims." 758 So.2d at 557. We pointed out that if the Jinrights were judicially estopped from bringing their claims against Paulk and Option Builders solely because they had failed to list those potential claims as an asset in their bankruptcy proceeding, claims of which the bankruptcy court had since been informed, Paulk and Option Builders would receive a windfall. We also concluded that the Jinrights would not benefit from their initial failure to list their claims as an asset in their bankruptcy proceeding, and that Paulk and Option Builders had not been prejudiced *1242 by the omission. Consequently, we held that the Jinrights were not judicially estopped from bringing their claims against Paulk and Option Builders.
The Court of Civil Appeals concluded that because the Bank was not a party to the bankruptcy proceeding or the divorce litigation in which Vincent asserted that he did not have the $500,000 at issue in his claims against the Bank, the case did not meet the Jinright requirement that when a party alleges "that a position taken in an earlier action estops the one taking such position from assuming an inconsistent position in a later action," Jinright, 758 So.2d at 555, the parties and actions must be the same. The Court of Civil Appeals also cited Dzwonkowski v. Sonitrol of Mobile, Inc., 854 So.2d 598 (Ala.Civ.App.2002) (judicial estoppel did not apply because the parties and actions were not the same and the parties asserting the defense of judicial estoppel were not misled by nor had they detrimentally relied on the different positions taken by the opposing party), and Hoffman v. Truck Driving Academy, Inc., 777 So.2d 151 (Ala.Civ.App.2000) (judicial estoppel did not apply where the defendant did not show prejudice arising from the plaintiff's failure to disclose assets to the bankruptcy court), to support its determination. Consequently, the Court of Civil Appeals held that Vincent was not judicially estopped from bringing his claims against the Bank. Vincent IV, 883 So.2d at 1236.
The Bank argues that Jinright occurred in the context of a Chapter 13 bankruptcy proceeding and should therefore be applied only in the context of a Chapter 13 bankruptcy proceeding. The Bank asserts in its brief to this Court that Chapter 13 proceedings are unique because "a Chapter 13 debtor has the opportunity to amend his plan before discharge"; "[n]o harm is done to anyone by a debtor amending his plan to include a claim or asset"; and "assets are distributed to [the debtor's] creditors" during the pre-discharge period. The Bank then concludes, in its brief to this Court, that if the debtor is judicially estopped from bringing a claim, "each creditor's recovery would likely be diminished." Therefore, the Bank states that the application of the Jinright factors in a case involving a Chapter 13 proceeding is necessary to prevent unfairness toward creditors. However, the Bank points out that this Court has applied the Jinright factors on only three occasions, all within the context of a Chapter 13 bankruptcy proceeding. See Jim Walter Homes, Inc. v. Kendrick, 810 So.2d 645 (Ala.2001); Ex parte White, 775 So.2d 798 (Ala.2000); Ex parte Moore, 793 So.2d 762 (Ala.2000).
Rather than resolving this case by limiting the holding in Jinright to those cases where the earlier action is a Chapter 13 bankruptcy proceeding, we opt for the broader approach of reevaluating the propriety of limitations upon the availability of the doctrine of judicial estoppel found in some of our earlier cases. We previously quoted from Jinright what was there described as "essentials to the establishment of an estoppel." Those requirements were found in Porter v. Jolly, 564 So.2d 434, 437 (Ala.1990), where this Court observed that "there are a number of limitations that should be placed upon this `doctrine of inconsistent positions,' which is in the nature of an estoppel." The Bank tries to distinguish Porter on the ground that Porter applies to equitable estoppel only. However, it clearly addresses inconsistent positions in judicial proceedings. Nevertheless, the requirements of privity and reliance set forth in Porter focus upon the relationship between the parties to the prior litigation as opposed to the relationship between the litigant and the judicial system.
*1243 Since Porter, our Court has dealt with the inconsistency of positions in judicial proceedings without attention to the strict requirements set forth in Porter for the availability of the doctrine of judicial estoppel. In Selma Foundry & Supply Co., 598 So.2d 844, this Court stated:
"As the United States Court of Appeals for the Third Circuit recognized, the doctrine of judicial estoppel `applies to preclude a party from assuming a position in a legal proceeding inconsistent with one previously asserted. Judicial estoppel looks to the connection between the litigant and the judicial system while equitable estoppel focuses on the relationship between the parties to the prior litigation.'"
598 So.2d at 846 (quoting Oneida Motor Freight, Inc., 848 F.2d at 419) (emphasis added).
In Jinright, there was no showing that the parties invoking judicial estoppel had been parties to the bankruptcy proceeding in which the prior inconsistent position had been taken nor had the parties invoking judicial estoppel relied upon those proceedings. Had we slavishly adhered in Jinright to the limitations set forth in Porter, we could have reached the same result simply by declining to apply the doctrine of judicial estoppel solely on those grounds without any discussion of benefit to the party accused of inconsistency and detriment to the party invoking judicial estoppel. To this extent, Jinright departs from rigid adherence to the requirements expressed in Porter.
This Court also applied the doctrine of judicial estoppel in Terminix International Co. v. Jackson, 723 So.2d 555, 558 (Ala.1998), an arbitration case in which a party had taken a position upon which the court had relied, thereby giving rise to the application of the doctrine of judicial estoppel. In so holding, this Court quoted with approval that portion of Selma Foundry & Supply Co. quoted above distinguishing judicial estoppel and equitable estoppel. No attention was given to a requirement of reliance by a party; the reference to reliance by the court was the operative basis for application of the doctrine of judicial estoppel.
Reliance and privity are components that fit easily under the heading of equitable estoppel, but should not be essential elements of the doctrine of judicial estoppel. See, e.g., Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1286 (11th Cir.2002) ("The doctrine of judicial estoppel protects the integrity of the judicial system, not the litigants; therefore, numerous courts have concluded, and we agree, that `[w]hile privity and/or detrimental reliance are often present in judicial estoppel cases, they are not required.'" (quoting Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 360 (3d Cir.1996))); Montrose Med. Group Participating Sav. Plan v. Bulger, 243 F.3d 773, 779 n. 3 (3d Cir.2001) ("Privity and detrimental reliance prerequisites for the application of equitable estoppelare not required for invocation of judicial estoppel."); Fay v. Federal Nat'l Mortg. Ass'n, 419 Mass. 782, 788, 647 N.E.2d 422, 426 (1995) ("Suffice it to say that we would apply the doctrine of judicial estoppel at least where a party had successfully asserted his or her inconsistent position in a previous proceeding, and that neither privity nor reliance are essential requirements."); and Johnson v. Si-Cor Inc., 107 Wash.App. 902, 907-908, 28 P.3d 832, 835 (Div. 3 2001) ("The majority of courts that have considered the matter have concluded that privity of the parties, reliance, and prejudicegenerally recognized elements of estoppelare inapplicable to the doctrine of judicial estoppel. 1B, James William Moore, Moore's Federal Practice, § 0.405[8] (2d ed.1991); Eugene *1244 R. Anderson & Nadia V. Holober, Preventing Inconsistencies in Litigation with a Spotlight on Insurance Coverage Litigation: The Doctrines of Judicial Estoppel, Equitable Estoppel, Quasi Estoppel, Collateral Estoppel, "Mend the Hold," "Fraud on the Court," and Judicial and Evidentiary Admissions, 4 Conn. Ins. L.J. 589, 622-36 (1997-1998)."). See also Rand G. Boyers, Precluding Inconsistent Statements: the Doctrine of Judicial Estoppel, 80 Nw. U.L.Rev. 1244 (1986), where the author states:
"First, reliance is not an element of judicial estoppel. Since equitable estoppel is designed `to ensure fairness in the relationship between parties,' reliance is an essential element of this type of estoppel. Without reliance, there would be no injury to a party and hence, no unfairness in the relationship. Judicial estoppel, on the other hand, strives to preserve the sanctity of the oath and protect the integrity of the judicial process. Reliance is not a factor because any inconsistent statement violates the sanctity of the oath and injures the integrity of the judicial process, whether or not some party relied on the first statement. The inconsistency itself damages `public confidence in the purity... of judicial proceedings.' Thus, for judicial estoppel to remain an independent doctrine, capable of achieving its intended objective, reliance should not be required."
80 Nw. U.L.Rev. at 1249-50 (footnotes omitted; emphasis added).
Speaking to privity, Boyers continued:
"Similarly, judicial estoppel, unlike the other estoppel doctrines, does not require privity between the parties in the two proceedings. Collateral and equitable estoppel operate only when the parties are in privity, for without privity, the objectives of each doctrine cannot be accomplished. Collateral estoppel, for instance, aims to conserve judicial resources by preventing repetitive litigation. Similarly, equitable estoppel `focuses on the relationship between the parties to the prior litigation,' and is designed to ensure fairness in that relationship.
"No such crucial nexus between privity and policy exists under judicial estoppel, whose essential purpose is `to prevent parties from deliberately shifting positions to suit the exigencies of the moment' in order to maintain the sanctity of the oath and the integrity of the judicial process. Indeed, the doctrine `has nothing to do with other parties to the suit.' Rather, `it is the very inconsistency that judicial estoppel will not tolerate.'"
80 Nw. U.L.Rev. at 1250 (footnotes omitted).
The United States Supreme Court in New Hampshire v. Maine, 532 U.S. 742, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001), recently observed that "`[t]he circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle'" and then identified several factors as informative in determining the applicability of the doctrine of judicial estoppel. 532 U.S. at 750-51, 121 S.Ct. 1808 (quoting Allen v. Zurich Ins. Co., 667 F.2d 1162, 1166 (4th Cir.1982)). The Court held that for judicial estoppel to apply (1) "a party's later position must be `clearly inconsistent' with its earlier position"; (2) the party must have been successful in the prior proceeding so that "judicial acceptance of an inconsistent position in a later proceeding would create `the perception that either the first or second court was misled'" (quoting Edwards v. Aetna Life Ins. Co., 690 F.2d 595, 599 (6th Cir.1982)); and (3) the party seeking to assert an *1245 inconsistent position must "derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." 532 U.S. at 750-51, 121 S.Ct. 1808. No requirement of a showing of privity or reliance appears in the foregoing statement of factors to consider in determining the applicability of the doctrine of judicial estoppel.
Application of the strict standards endorsed in Porter would require us to reject the Bank's defense of judicial estoppel on two groundswant of involvement of the Bank in the antecedent litigation and absence of reliance on the part of the Bank upon the result in the previous litigation. Such a result in this case is simply offensive Vincent would be permitted to have it both ways, successfully denying ownership of an asset in the earlier proceedings and seeking its recovery in this proceeding.
The Bank, after first having tried to distinguish Porter, urges us to apply Terminix with its emphasis on detriment to the Court and its recognition of a distinction between judicial estoppel and equitable estoppel. It can be said that Terminix and Selma Foundry & Supply Co., with their recognition of the distinction, have already sub silentio overruled the requirement of rigid adherence to a showing of privity and reliance as set forth in Porter. Likewise, Jinright, with its discussion of the effect of an amendment to the ongoing bankruptcy plan and analysis of a detriment to the plaintiff and a windfall to the defendant as determinative factors, is not substantially different from considerations appropriate to factors (2) and (3) in New Hampshire v. Maine. The emphasis in Jinright was also directed to the relationship between the litigant and the judicial system, as opposed to the relationship between the parties to the prior litigation. Cf. De Leon v. Comcar Indus., Inc., 321 F.3d 1289, 1292 (11th Cir.2003), reaching a result inconsistent with Jinright without reference to the standards set forth in New Hampshire v. Maine.
Application of the formulation in New Hampshire v. Maine yields a result that is not offensive to the judicial system. With reference to the requirement of clear inconsistency, Vincent's testimony in the divorce proceeding and his filings in the bankruptcy proceeding were completely inconsistent with the position he takes in the complaint in this action. In the earlier proceedings, he said that he did not have $500,000 in cash and certificates of deposit in a safe-deposit box; in this proceeding, he said that he did. Success of the prior proceedings cannot be challenged, because both proceedings concluded on a state of facts consistent with Vincent's not having $500,000 in cash and certificates of deposit. Finally, Vincent, if allowed to assert the inconsistent position in this proceeding, satisfies both alternative prongs set forth under the third factor of New Hampshire v. Mainehe would derive an unfair advantage and impose an unfair detriment on the Bank if not estopped.
Justice Houston, writing specially in Southern States Ford, Inc. v. Proctor, 541 So.2d 1081 (Ala.1989), embraced a useful standard for weighing the need for change against the advantages of settled principles of law under the doctrine of stare decisis. He posed the question as follows: whether the ratio decidendi of earlier precedent would "`hypothetically be consented to today by the conscience and the feeling of justice of the majority of all those whose obedience is required by [that] rule of law?'" Southern States Ford, Inc., 541 So.2d at 1093 (quoting Laun, Stare Decisis, 25 Va. L.Rev. 12, 22 (1938)). The conscience and feeling of justice of the overwhelming majority whose obedience is required to a rule that would permit Vincent *1246 to play fast and loose with the court would be, quite simply, shocked. We today embrace the factors set forth in New Hampshire v. Maine and join the main-stream of jurisprudence in dealing with the doctrine of judicial estoppel. To the extent that Porter v. Jolly and cases consistent with Porter have not heretofore been sub silentio overruled, they are expressly overruled.

IV. Conclusion

We hold that the Bank did not waive its defense of judicial estoppel and that Vincent is estopped from asserting his claims against the Bank. We therefore reverse the judgment of the Court of Civil Appeals as it pertains to the Bank and remand the case for the Court of Civil Appeals to affirm the judgment of the trial court in favor of the Bank.
REVERSED AND REMANDED.
BROWN, WOODALL, and STUART, JJ., concur.[*]
JOHNSTONE, J., concurs in part.
HOUSTON and HARWOOD, JJ., recuse themselves.
JOHNSTONE, Justice (concurring in part).
I concur, except that I express no opinion on the issue of whether the Bank waived its right to assert the defense of judicial estoppel.
NOTES
[*] Rule 16(b), Ala. R. App. P., provides that when by reason of disqualification the number of Justices competent to sit in the determination of a cause is reduced, a majority shall suffice, but in no event may a cause be determined unless at least four Justices sitting shall concur.