STUART, Justice.
This appeal is the latest in a decade-long dispute between Joseph Dzwonkowski, Sr. (“Joe Sr.” or “the father”), and two of his sons, Robert Dzwonkowski (“Robert”) and Joseph Dzwonkowski, Jr. (“Joe Jr.”) (hereinafter referred to collectively as “the sons”), regarding the ownership and control of Sonitrol of Mobile, Inc. (“Sonitrol”), a closely held corporation providing commercial-security services in the greater Mobile area. In a 2004 opinion, this Court dismissed Joe Sr.’s appeal of a judgment entered against him by the trial court, holding that the appeal was premature because the damages to be awarded Soni-trol, Robert; and Joe. Jr. in connection with that judgment had not yet been set. Dzwonkowski v. Sonitrol of Mobile, Inc., 892 So.2d 354, 361-63 (Ala.2004) (“Dzwonkowski II”). In a May 5, 2011, order, the trial court finalized the damages award, awarding Sonitrol $764,359 and Joe Jr. $1.[1] Joe Sr. appeals. We affirm.
I.
The origins of this dispute were described by the Court of Civil Appeals in Dzwonkowski v. Sonitrol of Mobile, Inc., 854 So.2d 598, 599-600 (Ala.Civ.App.2002) (“Dzwonkowski I ”), as follows:
“The father has been president of the Sonitrol franchise in Mobile since 1977. Before 1990, all shares of the corporation were held in a voting trust controlled by the father. In 1990, nine shares of stock were issued, as follows: one share to Joe Sr.; four shares to Robert; and four shares to Joe Jr. At the same time, the parties executed a buy-sell agreement that gave the corporation or the remaining shareholders the option to purchase the shares of a shareholder whose employment with the corporation had ceased.
“In 1994, Joe Jr. transferred his four shares of Sonitrol stock to Joe Sr., in exchange for his father’s paying certain debts and paying for Joe Jr.’s treatment for gambling addiction. The record contains a certifícate of shares, with an issue date of February 16, 1990, endorsed by Joe Jr. and delivered to Joe Sr. on July 13, 1994. Joe Sr. never reendorsed the certificate to Joe Jr.; the certificate remained in Joe Sr.’s possession until it was admitted in evidence in the instant case. Joe Jr. alleged that his father had promised to return the four shares of stock to him once he ‘got his life in order.’ Joe Jr. also alleged that his father’s conduct since 1994 has evinced an intent to retransfer the stock to him.
“In November 1999, the father, acting as the president of Sonitrol, terminated the sons as employees of the corporation and demanded that the sons offer their shares of stock back to the corporation pursuant to the 1990 buy-sell agreement. The sons responded by calling a special meeting of the board of directors for the purpose of removing the father as president of the corporation.
“On December 3,1999, the father filed a declaratory-judgment action, seeking a determination of the ownership of stock in the corporation and a temporary restraining order (‘TRO’) to prevent the *1174 sons from holding a special meeting of Sonitrol’s board of directors or from otherwise acting as directors and officers of Sonitrol. The sons counterclaimed, alleging that the father had interfered with the business operations of Sonitrol and had wrongfully diverted funds belonging to Sonitrol. They sought, among other things, a TRO to prohibit the father from acting in any representative capacity on behalf of Sonitrol.
“Following a hearing, the circuit court determined, on December 13, 1999, that Sonitrol’s board of directors consisted of Joe Sr., Robert, and Joe Jr. and that the directors’ meeting called by the sons was authorized by Sonitrol’s bylaws. Immediately following that determination, a meeting of the Sonitrol board of directors took place. The sons attended the meeting; the father did not attend. By a majority vote of the directors, the father was removed as an officer, discharged from employment, and asked to surrender his stock for resale to the corporation. The following officers were then elected at the meeting: Joe Jr., president; and Robert, vice-president, secretary, and treasurer.”
After those actions had taken place, the trial court notified the parties that the stock-ownership issue would be heard by an advisory jury on January 19, 2000. At the conclusion of a two-day trial, the advisory jury returned a verdict finding that Joe Sr. owned five shares of Sonitrol stock, that Robert owned four shares of Sonitrol stock, and that Joe Jr. owned no shares. Four days later, however, the sons moved the trial court to hold that Joe Jr. was the owner of the four shares of Sonitrol stock in dispute on the basis of the doctrine of judicial estoppel; at a subsequent hearing, they submitted evidence indicating that Joe Sr. had testified in a February 1999 deposition given in connection with divorce proceedings then underway in Florida involving him and his then wife that he owned only one share of Sonitrol stock and that Robert and Joe Jr. each owned four shares. On February 4, 2000, the trial court entered an order estopping Joe Sr. from claiming ownership of more than one share of Sonitrol stock.
The sons subsequently moved the trial court to enter a partial summary judgment in their favor on the stock-ownership issue, submitting evidence that, they alleged, established that Joe Sr. had transferred the four shares back to Joe Jr. and arguing that Joe Sr. was judicially estopped from claiming the four disputed shares. On August 20, 2001, the trial court granted their motion, certifying its judgment as final pursuant to Rule 54(b), Ala. R. Civ. P. Joe Sr. subsequently appealed that judgment and, in Dzwonkowski I, the Court of Civil Appeals reversed the judgment of the trial court, holding (1) that it could not be affirmed on the basis that Joe Sr. had transferred the four shares back to Joe Jr. because there were material questions of fact concerning Joe Sr.’s donative intent and (2) that the judgment could not be affirmed on the basis of the doctrine of judicial estoppel because all the elements necessary to apply the doctrine were not present — specifically privity and reliance. 854 So.2d at 607-09. The Court of Civil Appeals accordingly remanded the case for further proceedings.
On remand, the trial court empaneled another advisory jury to try the outstanding factual questions regarding the ownership of the Sonitrol stock. However, several days into the trial of that issue, the trial court entered a default judgment against Joe Sr. and dismissed all of his claims against Sonitrol, Robert, and Joe Jr. as a result of Joe Sr.’s contumacious *1175 behavior during the proceedings.[2] In a subsequent written order, the trial court declared Joe Jr. the owner of the four disputed shares of Sonitrol stock and stated that it would enter a judgment setting the monetary damages due Sonitrol, Robert, and Joe Jr. at a later date. Nevertheless, the trial court also certified its judgment as final pursuant to Rule 54(b). On July 18, 2008, Joe Sr. moved the trial court to alter, amend, or vacate that judgment.
On September 12, 2003, while Joe Sr.’s postjudgment motion was pending, this Court released its opinion in Ex parte First Alabama Bank, 883 So.2d 1236, 1244-46 (Ala.2003), in which we restated how the doctrine of judicial estoppel should be applied in Alabama, removing the privity and reliance elements from consideration. Sonitrol, Robert, and Joe Jr. promptly moved the trial court to supplement its order entering judgment in their favor by again holding that Joe Sr. was judicially estopped from claiming the four disputed shares of Sonitrol stock, and, on October 14, 2003, the trial court entered an order denying Joe Sr.’s postjudgment motion and granting Sonitrol and the sons’ request by supplementing its judgment. Joe Sr. then filed the appeal that was the subject of Dzwonkowski II, arguing (1) that the default judgment entered against him and the dismissal of his claims failed to comport with due process and that, even if there had been no due-process violation, the trial court exceeded its discretion in entering the default judgment and the dismissal and (2) that the trial court erred in holding that he was judicially estopped from claiming ownership of the four shares of Sonitrol stock that Joe Jr. also claimed. As stated supra, this Court ultimately dismissed that appeal as being from a nonfi-nal judgment because damages had not yet been determined. 892 So.2d at 363.
Thus, in April 2004, this case returned to the trial court, presumably so that damages could be awarded and a final judgment entered. However, before those proceedings could be completed, Joe Sr. initiated an action against Sonitrol, Robert, Joe Jr., and their attorneys in the United States District Court for the Southern District of Alabama. At the request of Sonitrol and the sons, the trial court delayed further consideration of this matter so that they could defend that new litigation. Unbeknownst to Sonitrol and the sons at the time, they would be defending themselves from new claims filed by Joe Sr. for the next several years — not only before the United States District Court for the Southern District of Alabama, but before the United States Court of Appeals for the Eleventh Circuit, the Jefferson Circuit Court, the United States Bankruptcy Court for the Northern District of Alabama,[3] and this Court, as well as the Court of Civil Appeals. However, aside from Joe Sr.’s being ordered to pay an impressive amount of attorney fees, those proceedings ultimately had little effect. Finally, on August 18, 2010, after all the other proceedings involving these parties were completed, Joe Sr. moved the trial court to enter a final order in this case so that he could file an appeal. After providing all parties with the opportunity to submit affidavits on the issue of damages, the trial court entered a final judgment on May 5, 2011, awarding Sonitrol $764,359 and Joe Jr. $1 on their claims against Joe Sr. and dismissing all of Joe *1176 Sr.’s claims against Sonitrol and the sons. On May 13, 2011, Joe Sr. filed this appeal.
II.
In his brief to this Court, Joe Sr. lists three issues for this Court’s review; however, all three of those issues rest on essentially the same inquiry — whether, after this case was remanded to the trial court following the decision of the Court of Civil Appeals in Dzwonkowski I, the trial court should have immediately entered an order declaring Joe Sr. the owner of the four disputed shares of Sonitrol stock. We have stated:
“In Ex parte Edwards, [727 So.2d 792 (Ala.1998),] this Court held that when an appellate court remands a case, the trial court does not have the discretion to conduct a new trial or an evidentiary hearing. 727 So.2d at 794-95. Instead, after a case is remanded, the trial court may enter ‘ “ ‘[n]o judgment other than that directed or permitted by the reviewing court.... The appellate court’s decision is final as to all matters before it, becomes the law of the case, and must be executed according to the mandate, without granting a new trial or taking additional evidence.’ ” ’ Id. at 794 (quoting Ex parte Alabama Power Co., 431 So.2d 151 (Ala.1983), quoting in turn 5 Am.Jur.2d Appeal & Error § 991 (1962)).”
Ex parte Queen, 959 So.2d 620, 621 (Ala.2006). Accordingly, we must determine if the trial court exceeded its discretion on remand by failing to follow the instructions given by the Court of Civil Appeals in Dzwonkowski I.
III.
Joe Sr. argues that the trial court was required to enter a judgment declaring him the owner of the four disputed shares of Sonitrol stock after the Court of Civil Appeals in Dzwonkowski I reversed the partial summary judgment entered in favor of Sonitrol and his sons. We disagree. In Dzwonkowski I, Sonitrol and the sons argued that the trial court’s judgment declaring Joe Jr. the owner of the four disputed shares of Sonitrol stock should be affirmed either because Joe Sr. had allegedly transferred those shares back to Joe Jr. or because Joe Sr. had denied owning the stock while under oath in a separate court proceeding, and he was thus judicially estopped from claiming ownership in this proceeding. 854 So.2d at 602-07. The Court of Civil Appeals held that there were genuine issues of material fact with regard to whether Joe Sr. had transferred the shares back to Joe Jr. and that all the elements of judicial estoppel were not present; accordingly, it reversed the judgment of the trial court, stating: “The judgment of the circuit court is reversed and the cause is remanded for further proceedings.” 854 So.2d at 610.[4] Thus, the Court of Civil Appeals did not issue a mandate to the trial court to enter a judgment in favor of Joe Sr. on remand; rather, it held that the summary judgment was inappropriate not only because the elements of judicial estoppel were not met, but also because genuine issues of material fact remained. In light of those outstanding issues, it would have been equally inappropriate for the trial court to enter a *1177 judgment in favor of Joe Sr. on remand because summary judgment is appropriate only when there are no genuine issues of material fact before the court. See Rule 56(c)(3), Ala. R. Civ. P. (summary judgment is appropriate when there exists “no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law”).
On remand, the trial court accordingly complied with the direction of the Court of Civil Appeals to conduct “further proceedings” when it empaneled an advisory jury to try the remaining factual questions regarding stock ownership. Before those issues could be decided, however, the trial court was compelled to enter a default judgment against Joe Sr. as a result of his unruly behavior and his failure to abide by the instructions of the trial court.[5] While postjudgment motions were pending in the trial court, this Court restated the elements of judicial estoppel in a separate case, Ex parte First Alabama Bank, and the trial court then supplemented its judgment to also hold that Joe Sr. was judicially estopped from claiming the four disputed shares of Sonitrol stock. Joe Sr. argues that the trial court violated the law-of-the-case doctrine and acted contrary to the mandate of the Court of Civil Appeals in Dzwonkowski I in applying the doctrine of judicial estoppel; however, he fails to recognize that “[t]he law-of-the-case doctrine may be disregarded if the court is convinced its prior decision was clearly erroneous or there has been an intervening change in the law..." Belcher v. Queen, 39 So.3d 1023, 1038 (Ala.2009) (emphasis added). Clearly, Ex parte First Alabama Bank constituted a change in the law regarding the doctrine of judicial es-toppel, and the trial court accordingly violated no legal principle by recognizing that change.
IV.
Thus, although Joe Sr. is correct to argue that a trial court has a strict duty on remand to comply with the mandate given by an appellate court and that it has no authority to enter any judgment other than that directed by the reviewing court, his argument ultimately fails because the trial court considering his case was not directed by the Court of Civil Appeals to enter a judgment in his favor. Rather, that court reversed a partial summary judgment that had been entered against him on the basis that there were genuine issues of material fact, and it instructed the trial court to conduct the further proceedings necessary to resolve those issues and to conclude the case. The trial court did not act contrary to that specific mandate, to our caselaw setting forth the law-of-the-case doctrine or the duties of a trial court on remand, or to Joe Sr.’s due-process rights by taking the action it did when the case was remanded to it after Dzwon-kowski I. Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.
MALONE, C.J., and PARKER, SHAW, and WISE, JJ., concur.

. In the intervening period between the release of Dzwonkowski II and the trial court’s May 5, 2011, order, Robert advised the trial court that he no longer wished to pursue monetary damages against Joe Sr., and Joe Jr. stated that he sought only nominal damages.

. We quoted from the trial court's June 20, 2003, order describing Joe Sr.'s in-court behavior in Dzwonkowski II, 892 So.2d at 357-61.

. Joe Sr. had attempted to initiate bankruptcy proceedings on behalf of Sonitrol in the United States Bankruptcy Court for the Northern District of Florida as well in February 2000.

. In Dzwonkowski II, this Court summarized the holding of the Court of Civil Appeals in Dzwonkowski I as follows:
"[Joe Sr.’s] appeal was the subject of Dzwonkowski I, in which the Court of Civil Appeals decided that there were genuine issues of material fact regarding ownership of the four disputed shares, so that a summary judgment was inappropriate. That court reversed the summary judgment and remanded the case for further proceedings.”
892 So.2d at 357.

. In Dzwonkowski II, Joe Sr. raised the issue whether the trial court had violated his due-process rights and exceeded its discretion in entering the default judgment against him; however, because that appeal was dismissed as being from a nonfinal judgment, the issue was not addressed at that time. 892 So.2d at 361. Joe Sr. has not raised that issue in this appeal.