WOODALL, Justice.
 

 Selzer Automotive, L.P. (“Selzer”), a foreign limited partnership whose parent company is a German corporation, appeals from an order denying its motion to compel arbitration of its dispute with Cumberland Plastic Systems, LLC (“Cumberland”). We reverse and remand.
 

 I. Procedural Background
 

 On July 8, 2008, Cumberland and Selzer executed a contract whereby Selzer would purchase from Cumberland certain component parts for products to be manufactured by Selzer. The contract contained the following pertinent provisions relating to arbitration:
 

 “17. Arbitration.
 

 “In the event of any dispute between the parties arising under or relating to these Terms and Conditions, including, without limitation, if the parties are unable to agree on any matter for which agreement is required under an Order, or if either party is in default hereunder, such dispute shall be settled by arbitration in accordance with the rules for commercial arbitration of the American Arbitration Association (‘AAA’), as then in effect.
 
 Each party shall pay one-half of the deposit required by AAA....
 

 “18. Jurisdiction; Venue.
 

 “Notwithstanding the provisions in paragraph 17, above, for purposes of injunc-tive relief with regard to any dispute relating to the sale and/or shipment of any Goods or Services under any Order, or
 
 should arbitration not be available,
 
 [Cumberland] irrevocably ... agrees and consents to the sole and exclusive jurisdiction of the courts of the State of Alabama....”
 

 (Emphasis added.)
 

 Subsequently, a dispute arose over Sel-zer’s alleged nonpayment of invoices submitted by Cumberland, and, on February 25, 2009, Cumberland filed a demand for arbitration before the American Arbitration Association (“the AAA”), claiming an amount in dispute of $607,289.86. The only portion of the contract Cumberland enclosed with its arbitration demand was page eight, which contained the arbitration provisions.
 

 On March 11, 2009, the International Centre for Dispute Resolution (“the ICDR”), which is the international division of the AAA, sent a letter to Cumberland and Selzer acknowledging receipt of Cumberland’s demand for arbitration. The letter stated, in pertinent part:
 

 “Please note that you are receiving this letter because our administrative filing requirements have not been met. Therefore no Statement of Defense or Counterclaim is due at this time. Once all filing requirements have been met, you will be notified by a case manager of the appropriate response dates. The
 
 *274
 
 Parties are requested to provide us with the following documents/payments:
 

 “1. ... [W]e kindly ask [Cumberland] to provide the ICDR ... with a
 
 copy of the entire contract
 
 by close of business March 23, 2009.
 

 “2. Pursuant to the ICDR’s fee schedule ‘an initial filing fee is payable in full by a filing party ...’ This will confirm receipt of $8,000.00 from [Cumberland]. The filing fees for the claim amount of $607,239.36 is $6,000. We note that the Arbitration Agreement provides that ‘[e]ach party shall pay one-half of the deposit required by AAA.’ [Cumberland] advised the ICDR that this includes the filing fees. If [Selzer is] in agreement, we ask that [Selzer] remit the balance of the filing fee in the amount of $3,000.00 by close of business March 23, 2009. Otherwise,
 
 [Cumberland] should remit this amount
 
 before March 31, 2009, in order for this matter to be properly filed.
 

 “Upon receipt of the above the ICDR will proceed with administration of this case. If we do not receive the requested information/payment by said deadlines, we will return all paperwork and will not consider this matter properly filed.”
 

 (Emphasis omitted; other emphasis added.)
 

 By April 15, 2009, neither party had paid the additional $3,000 requested by the ICDR. On that day, counsel for Cumberland sent the ICDR the following e-mail:
 

 “In response to your e-mail correspondence, I would like to point out that [Selzer] failed to comply with the arbitration provision contained in the agreement in that [it] would not submit [its] portion of the filing fee. It was [Selzer], not Cumberland, who elected not to go forward with the process. I would appreciate your noting this for the file. If you deem it necessary to clarify your letter dated today, please forward this email to [Selzer].”
 

 Three minutes later, the ICDR replied to the e-mail from Cumberland’s counsel, as follows:
 

 “Thank you very much for this e-mail which I have made part of the file. The fact that [Selzer has] not paid filing fees is duly noted.
 

 “Please note that whenever an arbitration agreement provides for the Respondents) to bear all or part of the filing fees and does not pay, the
 
 Claimant has the burden
 
 to decide whether Claimant wants to also advance Respondent(s)’s filing fee in order to initiate the process.
 
 Claimants then tend to add this position to their statement of claim.
 

 “On another note, I do recall that
 
 the split of filing fees was not completely unambiguous and would have needed the arbitrator’s attention in case of a dispute on this issue.
 
 Ergo, any clarification we could provide would not have much of value and could be interpreted as a decision on this point.
 

 “That said and if you deem it necessary, please feel free to share your e-mail below with [Selzer] to play it safe.
 

 “On another note,
 
 should the court send this matter back to arbitration,
 
 please contact either me or my colleague Tom Simotas
 
 ... to speed up the process.”
 

 (Emphasis added.)
 

 That same day, the ICDR sent the parties a letter, stating, in pertinent part:
 

 “Dear Parties,
 

 “[Cumberland’s] Counsel advised us on April 14, 2009, via telephone that
 
 [Cumberland] no longer wishes to pursue this
 
 
 *275
 

 matter.
 
 Therefore, we have deleted the above captioned matter from our records.
 

 “We have enclosed check no. 1276 in the amount of $3,000.00 as this matter has never reached the stage of commencement and, accordingly, the partial filing fees paid by [Cumberland] are fully refundable.
 

 “We thank the parties for having chosen the ICDR as its ADR provider and hope to do business with you again in the future.”
 

 (Emphasis added.)
 

 In fact, as of April 3, 2009, Cumberland had already commenced the underlying action against Selzer in the Lee Circuit Court. Selzer subsequently filed a motion to compel arbitration of the dispute. In response to that motion, Cumberland asserted that Selzer’s failure to match Cumberland’s $3,000 filing fee “rendered [arbitration] unavailable,” thereby entitling Cumberland to a judicial forum for its claims. Cumberland also argued that Sel-zer was “judicially estopped” to now compel arbitration. The trial court denied Sel-zer’s motion to compel arbitration, and Selzer appealed.
 

 II. Discussion
 

 “ ‘[T]he standard of review of a trial court’s ruling on a motion to compel arbitration at the instance of either party is a
 
 de novo
 
 determination of whether the trial judge erred on a factual or legal issue to the substantial prejudice of the party seeking review.’ ”
 
 Vann v. First Cmty. Credit Corp.,
 
 834 So.2d 751, 752-53 (Ala.2002) (quoting
 
 Ex parte Roberson,
 
 749 So.2d 441, 446 (Ala.1999) (emphasis omitted)).
 

 “The party seeking to compel arbitration has the initial burden of proving the existence of a written contract calling for arbitration and proving that that contract evidences a transaction involving interstate commerce.”
 
 Polaris Sales, Inc. v. Heritage Imports, Inc.,
 
 879 So.2d 1129, 1132 (Ala.2003). It is undisputed that Selzer has met its burden as to these prerequisites.
 

 “‘“[A]fter a motion to compel arbitration has been made and supported, the burden is on the non-movant to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question.” ’ ”
 
 Kenworth of Birmingham, Inc. v. Langley,
 
 828 So.2d 288, 290 (Ala.2002) (quoting
 
 Fleetwood Enters., Inc. v. Bruno,
 
 784 So.2d 277, 280 (Ala.2000), quoting in turn
 
 Jim Burke Auto., Inc. v. Beavers,
 
 674 So.2d 1260, 1265 n. 1 (Ala.1995)). Cumberland has never maintained that the agreement is invalid or that it does not apply to this dispute. It merely reiterates its assertion that Selzer’s failure to pay its alleged share of the filing fee to the ICDR “rendered [arbitration] unavailable” and that, because of such nonpayment, Selzer is “judicially estopped” to compel arbitration. Neither ground has merit.
 

 It is abundantly clear that there was no impediment to arbitration that was beyond the control of Cumberland itself. In its letter of March 11, 2009, the ICDR clearly informed the parties that if Selzer did not pay the disputed second installment of $3,000, then
 
 Cumberland
 
 should do so. Similarly, in its e-mail of April 15, 2009, to Cumberland’s counsel, the ICDR suggested that respondents in arbitration proceedings sometimes balked at paying their share of the filing fee, but that, in such cases, it was
 
 common for the party seeking arbitration to pay
 
 the disputed portion and to seek to recoup it as part of the recovery. Finally, the ICDR’s letter to the parties on April 15, 2009, makes clear the fact that it was
 
 Cumberland
 
 that “no longer wish[ed] to pursue [the] matter” in
 
 *276
 
 arbitration. In that same connection, the ICDR indicated in an e-mail to Cumberland’s counsel that it stood ready to take up the matter again “should the court send [the] matter back to arbitration.”
 

 The right to arbitration would be all but illusory if the process turned on the unqualified cooperation of
 
 both
 
 parties from the outset. Indeed, threshold
 
 procedural
 
 questions such as the one here involved are for the arbitrator to resolve. “ ‘Procedural arbitrability’ ... involves questions that grow out of the dispute and bear on its final disposition, e.g., defenses such as notice, laches, estoppel, and other similar compliance defenses; such questions are for an arbitrator to decide.”
 
 Brasfield & Gorrie, L.L.C. v. Soho Partners, L.L.G.,
 
 85 So.3d 601, 604 (Ala.2009). ‘““[I]n the absence of an agreement to the contrary, issues of ... procedural arbi-trability,
 
 i.e.,
 
 whether prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met are for the arbitrators to decide.” ’ ”
 
 Id.
 
 at 606 (quoting
 
 Howsam v. Dean Witter Reynolds, Inc.,
 
 537 U.S. 79, 85, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002), quoting in turn Revised Uniform Arbitration Act of 2002, § 6, comment 2, 7 U.L.A. 13 (Supp.2002)(emphasis omitted)).
 

 According to Selzer:
 

 “[Cumberland] chose not to continue pursuing the arbitration, using as an excuse that [it] did not believe [it] should have to pay the entire filing fee. As noted by ICDR, that dispute would have been properly addressed by the arbitrator. If [Cumberland] prevailed, then the claimed portion of the filing fee would have been part of [Cumberland’s] recovery. [Cumberland] cannot simply abandon the arbitration process, which [it] initiated, and then blame Selzer because the arbitration did not take place.”
 

 Reply brief, at 7-8. We agree. The mere abandonment of its claim before the ICDR does not afford Cumberland a basis upon which to claim that the arbitral forum is now not available to Selzer.
 

 We are likewise unpersuaded that Selzer is judicially estopped to compel arbitration of this dispute. “The doctrine of judicial estoppel exists to ‘ “protect[ ] the
 
 integrity of the judicial system,
 
 not the litigants.” ’ ”
 
 Hughes v. Mitchell Co.,
 
 49 So.3d 192, 203 (Ala.2010) (quoting
 
 Ex parte First Alabama Bank,
 
 883 So.2d 1236, 1243 (Ala.2003), quoting in turn
 
 Burnes v. Perneo Aeroplex, Inc.,
 
 291 F.3d 1282, 1286 (11th Cir.2002) (emphasis added)). Application of the doctrine of judicial estoppel is triggered when there is (1) a prior judicial or quasi-judicial proceeding,
 
 Singley v. Bentley,
 
 782 So.2d 799, 803 (Ala. Civ.App.2000), (2) in which a party successfully asserted a position that is (3) contrary to the position asserted by that party in a later proceeding, and in which (4) the party would ‘“derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.’ ”
 
 Ex parte First Alabama Bank,
 
 883 So.2d 1236, 1245 (Ala.2003) (quoting
 
 New Hampshire v. Maine,
 
 532 U.S. 742, 751, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001)).
 

 Selzer argues that “there has been
 
 no prior judicial proceeding
 
 ” or, in fact,
 
 any
 
 “prior proceeding of any kind. As made clear by the ICDR, the arbitration proceeding was never properly initiated. There is simply no application of the doctrine of judicial estoppel in this case.” Sel-zer’s brief, at 17 (emphasis added). We agree. The doctrine of judicial estoppel does not preclude an order compelling arbitration of Cumberland’s claims.
 

 III. Conclusion
 

 For the foregoing reasons, the trial court erred in denying Selzer’s motion to
 
 *277
 
 compel arbitration. Consequently, its order denying the motion is reversed, and the cause is remanded for the entry of an order consistent with this opinion.
 

 REVERSED AND REMANDED.
 

 COBB, C.J., and SMITH, PARKER, and SHAW, JJ., concur.