BOLIN, Justice.
*599 The Hillwood Office Center Owners' Association, Inc. ("the HOCOA"), Steve Nelson, Ron Fullove, and JoAnne Rousso appeal from an order of the Montgomery Circuit Court directing the arbitration of certain claims asserted against them by Carol A. Blevins.
Facts and Procedural History
These cases have their genesis in Blevins v. Hillwood Office Center Owners' Ass'n, 51 So.3d 317 (Ala. 2010) (" Blevins I"). A brief discussion of that case is beneficial to an understanding of the present cases. In March 2005, Carol Blevins purchased unit 200-3 in the Hillwood Office Center, a condominium office complex. In April 2005, Carol's husband, Jerry Blevins, established a law practice in the office unit. In May 2005, Carol purported to transfer, by quitclaim deed, her interest in the office unit to Jerry. The deed was witnessed solely by Jerry; it was never recorded in the office of the Montgomery Probate Court; and no copy of the deed was provided to the HOCOA, as required by the declaration of condominium.[1]
After some shrubbery he had planted in front of his office unit died from a lack of water, Jerry inquired as to why the sprinkler system at the office complex was never activated. Jerry was told by the owner of another unit in the office complex that the sprinkler system had not been operational for several years. Additionally, Jerry learned that the HOCOA had no board of directors and had not held an annual meeting in several years. Subsequently, Jerry organized a meeting of the other unit owners at which a three-person board of directors of the HOCOA was elected in accordance with the bylaws of the HOCOA. Jerry was named a board member, as well as president of the board.
During Jerry's presidency, the sprinkler system was repaired and became operational. The sprinkler system could be activated by anyone from an unlocked control panel located at the rear of the complex. Jerry activated the sprinkler system at his discretion while he served as president of the board of directors of the HOCOA. Other unit owners objected to Jerry's discretionary use of the sprinkler system based on the costs incurred by the HOCOA for the resulting water usage.
In June 2008, Jerry resigned from the HOCOA board of directors and its presidency. In July 2008, the HOCOA elected a new board of directors and president. On August 10, 2008, Jerry activated the sprinkler system. He discovered the next day that a lock had been installed on the box containing the control panel for the sprinkler system. Jerry demanded that the board remove the lock from the sprinkler-system control box or provide him with a key, and he informed the board that if he were not provided a key to the lock he would cut the lock off the box. The board refused to remove the lock or to provide Jerry with a key to the lock, taking the position that the board, not the unit owners, was responsible for the common areas. Subsequently, Jerry cut the lock on the control box and activated the sprinkler system. The board replaced the lock to the control box, and Jerry cut the replacement lock. Jerry ultimately cut four locks on the sprinkler-system control box. Eventually, *600 the board removed the entire control panel and placed control of the sprinkler system under the exclusive control of a board member. As a result, Jerry had to water the shrubbery in front of his unit manually with a garden hose.
On September 29, 2008, Jerry sued the HOCOA and the board members, seeking a judgment declaring that the HOCOA was not a legal entity because of its failure to comply with the laws respecting corporate existence. Jerry further asserted claims of nuisance, breach of fiduciary duty, conspiracy, and conversion and sought specific performance. The HOCOA and the board members argued in response, among other things, that Jerry lacked standing to sue the HOCOA and the board members because Carol was the record owner of the office unit. Jerry then amended his complaint to add Carol as a plaintiff. Subsequently, the HOCOA and the board members moved the trial court for a summary judgment on the Blevinses' claims against them. The trial court entered a summary judgment in favor of the HOCOA and the board members. On appeal, this Court held that the trial court never acquired jurisdiction of the matter because Jerry had failed to establish that he had standing to sue the HOCOA and the board members. Further, this Court held that an action, having begun at the instance of someone without standing, cannot subsequently be maintained by someone with standing. Therefore, this Court in Blevins I vacated the summary judgment entered in favor of the HOCOA and the board members and dismissed the appeal and the case.
Following the events set forth in Blevins I, Carol, who was then a member of the board, became involved in a controversy with Mitchell Properties, LLC-owner of units 200-9 and 200-10 at the Hillwood Office Center-Malone Staffing Solutions, Inc., and the HOCOA and its board members arising out of Mitchell Properties' leasing of its office units to Malone Staffing. At the time the proposed lease between Mitchell Properties and Malone Staffing was being considered by the HOCOA board, its members consisted of Steve Nelson, Steve Arnberg, JoAnne Rousso, and Carol. It appears that on May 11, 2015, the HOCOA board rejected the proposed lease between Mitchell Properties and Malone Staffing on the ground that the proposed lease conflicted with the rules and regulations that governed the HOCOA. On May 14, 2015, Carol resigned her position on the HOCOA board effective immediately. It appears that on May 15, 2015, the HOCOA board notified Mitchell Properties that the proposed lease had been rejected and further afforded Mitchell Properties an additional 10 days to submit a revised lease. On May 16, 2015, Rousso formally resigned from the HOCOA board effective immediately. On May 21, 2015, Arnberg formally resigned from the HOCOA board effective immediately. Those resignations left Nelson as the sole HOCOA board member. On May 22, 2015, Mitchell Properties submitted an addendum to the proposed lease agreement for the HOCOA board to consider. On that same date, Carol offered to "resume her duties as a board member if [Nelson was] agreeable to it." Nelson declined her offer.
On May 27, 2015, Carol, with husband Jerry representing her, sued Mitchell Properties and Malone Staffing asserting claims of nuisance, breach of fiduciary duty, and breach of contract and seeking a judgment declaring that the lease between Mitchell Properties and Malone Staffing was void and injunctive relief. That action was assigned case no. CV-2015-900849. Carol set forth the following factual allegations in her complaint:
*601 "Pursuant to its by-laws, HOCOA is governed by a Board of Directors (the 'Board'), which must consist of a minimum of three (3) owners.
"[Carol] owns Suite 200-3 at the [Hillwood Office Center], and also serves on the Board. [Carol] brings this action in both her individual capacity and as board member.
"Mitchell Properties owns Suites 200-9 & 10 at the [Hillwood Office Center].
"The by-laws of the HOCOA read in relevant part:
" 'Leasing of a unit by the unit owner is not prohibited; however, the written consent of the Board of Directors must be obtained. The unit owner must submit a request, in writing, setting forth the name of the lessee or sublessee, type of instrument to be used, nature of lessee's or sublessee's business and supply all other information as may be required by the Board of Directors.'
"On or about April 16, 2015, Defendant Mitchell Properties entered into a lease agreement ('the lease agreement') with Defendant Malone Staffing for the lease of Suites 200-9 & 10.
"Defendant Malone Staffing occupied and began conducting business out of Suites 200-9 & 10, on or about May 1, 2015.
"Defendant Mitchell Properties did not seek, nor obtain, the written consent of the Board prior to entering into the lease agreement, nor prior to Defendant Malone Staffing occupying Suites 200-9 & 10.
"In fact, Defendant Mitchell Properties did not submit the lease agreement to the Board until it was confronted about its failure to secure Board approval for the lease agreement.
"After being confronted, Defendant Mitchell Properties then submitted a request to the Board for approval of the lease agreement.
"On May 11, 2015, the Board rejected/denied the lease agreement on the ground that the lease agreement as a whole conflicted with the rules and regulations which govern the operations of HOCOA.
"The Board notified Defendant Mitchell Properties of the rejection of the lease agreement on or about May 15, 2015, and further afforded it ten (10) additional days for submission of a revised lease agreement for consideration by the Board if it chose to do so.
"Subsequent to May 15, 2015, certain members of the Board resigned and the Board is presently without the minimum number of members (3) required to act on any matters.
"On or about May 22, 2015, Defendant Mitchell Properties submitted an addendum ('the addendum') to the lease agreement for consideration by the Board.
"Notwithstanding the fact that the Board is presently unable to act on the addendum due to lacking three (3) members, the addendum does not remedy the problems with the original lease agreement and is due to also be rejected/denied if, and when, it is ever considered.
"In any event, the Board's prior rejection of the lease agreement remains unaltered.
"Defendant Mitchell Properties has refused repeated requests to have Defendant Malone Staffing vacate Suites 200-9 & 10.
"Since occupying Suites 200-9 & 10, Defendant Malone Staffing has engaged in repeated acts in violation of the rules and regulations which govern the HOCOA, to include but not limited to:
"a) permitting loitering at various locations around Suites 200-9 & 10;
*602 "b) leaving the front and rear doors to Suites 200-9 & 10 open for extended periods of time throughout the day, using an old paint can to prop the front door open;
"c) placing advertisements at various locations about the property;
"d) leaving excessive trash in the parking area;
"e) allowing others to congregate and assemble in the parking areas where persons sit on top of their vehicles, listen to music with their doors open and just generally 'hang out'; &
"f) creating hazardous and dangerous conditions for invitees to the property ('the violations').
"The violations have occurred with the knowledge of Defendant Mitchell Properties; however, Defendant Mitchell Properties has repeatedly failed/refused to take affirmative action to address these on-going issues.
"The atmosphere created at the [Hillwood Office Center] as a result of these continued and on-going violations is not conducive to a professional office complex. To the contrary, the violations are disparaging to the businesses located at the [Hillwood Office Center] and the complex as a whole."
Pursuant to the HOCOA's bylaws, Nelson solicited Rousso and Arnberg to resume their positions as board members for the purpose of further evaluating and making a determination as to the proposed lease. Rousso and Arnberg agreed to do so and were reappointed to the HOCOA board by Nelson. Upon Rousso's and Arnberg's reappointment to the HOCOA board, a quorum existed so that the board could vote on Mitchell Properties' proposed revised lease. The lease between Mitchell Properties and Malone Staffing was finally approved by the HOCOA board on June 3, 2015.
On June 10, 2015, the HOCOA moved to intervene in Carol's action against Mitchell Properties and Malone Staffing. The HOCOA asserted that Carol was not a member of the HOCOA board of directors because she had resigned from the board on May 14, 2015; that, at the time of Carol's resignation, the HOCOA board was in the process of evaluating Mitchell Properties' request to lease units 200-9 and 200-10 to Malone Staffing; that the HOCOA board had been in negotiations with Mitchell Properties to work through concerns about the proposed lease with Malone Staffing; and that Carol, through her attorney Jerry, had raised challenges to the composition, authority, and actions of the HOCOA board, including, but not limited to, whether it was properly serving, whether it could properly approve the lease proposed by Mitchell Properties, and whether it was properly maintaining the grounds. The HOCOA argued that intervention was proper because a determination of the above-described issues could have an impact on the claims asserted by Carol against Mitchell Properties and Malone Staffing. On June 12, 2015, the trial court entered an order granting the HOCOA's motion to intervene.
On June 13, 2015, the HOCOA petitioned the trial court for a judgment declaring, among other things, the validity of the composition of the HOCOA board, the validity of the HOCOA board's actions relating to the approval of the lease between Mitchell Properties and Malone Staffing, and the validity of the HOCOA board's retention of Chad Bryan as legal counsel for the HOCOA and the board members in their official capacities.
On June 22, 2015, Carol amended her complaint against Mitchell Properties and Malone Staffing to assert a fraud claim and to add Nelson, Arnberg, and Rousso *603 as defendants, both in their capacities as owners of office units at the Hillwood Office Center and as members of the HOCOA board. Subsequently, Arnberg sold his office unit at the Hillwood Office Center and, by doing so, was no longer eligible to serve on the HOCOA board. On July 2, 2015, Ron Fullove was appointed to serve on the HOCOA board by Nelson and Rousso. Fullove was never substituted for Arnberg as a defendant in the action.
In July 2015, Carol reached an agreement with Mitchell Properties, Malone Staffing, the HOCOA, and Nelson and Rousso regarding the claims asserted against them ("the settlement agreement"). On July 30, 2015, Bryan, the HOCOA and the board members' counsel, communicated the terms of the settlement agreement in an e-mail to both Jerry, counsel for Carol, and John Henig, counsel for Mitchell Properties. The terms of this agreement provided:
"The Board would send a letter to Mitchell/Malone asking that they take appropriate action to ensure employees and invitees are not disruptive to other members of the [HOCOA]. Specifically, the Board would request that Mitchell/Malone undertake good faith efforts to prevent employees and invitees from playing music at unreasonable levels, from sitting inside their vehicles in the parking lot for extended periods, and/or from congregating on the grounds. Mitchell/Malone also should be reminded of the need to obtain Board approval regarding any exterior signage and of otherwise adhering to the governing documents of the [HOCOA].
"Mitchell/Malone would agree to abide by the governing documents of the [HOCOA] and promptly respond in good faith to any complaints made about the above and/or other issues. Mitchell/Malone also would make good faith efforts to periodically monitor the parking lot and common areas. Notice of a Complaint against Malone/Mitchell would be handled as set forth in the following paragraph.
"Carol would agree that, in the event she perceives a violation of the governing documents of any type (whether or not related to Mitchell/Malone), she would be required to report it to the Board and allow the Board a reasonable opportunity to investigate and take action. In the event the Board determines a violation to have occurred, the offending party would be given a reasonable opportunity to cure (except that the Board may pursue other remedies if in good faith it determines that ongoing and knowing violations have rendered any additional right to cure as being futile). In the event the Board determines no violation to have occurred, or that sufficient remedial measures have been taken, Carol acknowledges the Board's authority to so act in good faith. However, if Carol challenges the Board's decision as a clear violation of the governing documents, the parties consent that any such dispute would be submitted to binding arbitration for a prompt and final resolution. The requirement to arbitrate would apply equally to any claims by Carol against any party to this action and any future members of the Board for actions taken in that capacity. The arbitrator would be jointly selected by the parties with all costs of arbitration being equally shared by the parties involved in the arbitration proceeding.
"Carol would agree to withdraw the assertion that she is and/or has been a Board member at any time since her May 14, 2015, resignation. Carol likewise would agree that the appointments of Steve Arnberg, Joanne Rousso, and Ron Fullove were properly made by Steve Nelson. Carol would dismiss with prejudice *604 all claims in the pending lawsuit and would release any and all claims accrued to date."
On August 12, 2015, Carol moved the trial court for a voluntary dismissal of her action against Mitchell Properties, Malone Staffing, and the intervenor HOCOA and its board members, stating that the parties had reached an amicable agreement resolving the issues before the trial court and that Mitchell Properties, Malone Staffing, the HOCOA, and its individual board members consented to the dismissal of the action. On that same day the trial court entered an order dismissing Carol's action with prejudice.
On August 27, 2015, Carol, through Jerry, acting as her counsel, notified Bryan by e-mail that the "problems" with Malone Staffing "seem[ed] to be continuing" and that she would like the board to take prompt action to address the problems. On September 11, 2015, Bryan notified Carol that the concerns set forth in her e-mail had been discussed with Malone Staffing. On September 11, 2015, Carol, through Jerry, notified Bryan by e-mail that "discussing" the ongoing violations was not sufficient and that the HOCOA board had an affirmative duty to stop what she characterized as continued violations. On September 18, 2015, Carol, through Jerry, notified Bryan of continued violations by Malone Staffing and further informed Bryan that "due to the Board's refusal to address these on-going issues" she wished to invoke the arbitration process provided by the settlement agreement.
Subsequent to Carol's demand for arbitration, the parties selected attorney Phil Adams as the arbitrator and agreed that the arbitrator's fee would be split equally among Carol, the HOCOA, and board members Nelson, Rousso, and Fullove. The arbitration proceeding was scheduled for December 10 and 11, 2015. Carol also scheduled the taking of the HOCOA board members' depositions for November 20, 2015.
On October 19, 2015, Carol submitted her statement of claims in arbitration to the arbitrator, naming the HOCOA and its board members Nelson, Rousso, and Fullove, in both their individual capacities and their official capacities as board members. Carol stated claims of nuisance, breach of fiduciary duty, breach of contract, and wantonness, and sought a declaratory judgment and injunctive relief, and asserted that her action was a derivative one filed on behalf of the HOCOA.
On November 13, 2015, Mark G. Montiel and C. Jordan Speake entered notices of appearance in the arbitration proceeding as counsel for the HOCOA and its board members. On November 18, 2015, Montiel and Speake moved the arbitrator to dismiss Carol's statement of claims in arbitration, arguing that the claims failed to state a claim upon which relief could be granted and were barred by the doctrines of "res judicata, collateral estoppel, issue preclusion, and/or claim preclusion." Montiel and Speake also moved the arbitrator to dismiss the HOCOA board members from the arbitration proceeding, contending that the board members had been improperly named as defendants in Carol's statement of claims because, they asserted, the members served on the board voluntarily, "hav[ing] no individual liability" to Carol and owing Carol "no separate duty" and, thus, were immune from suit under the Volunteer Service Act, § 6-5-336, Ala. Code 1975, and were not parties to the arbitration agreement in their individual capacities.
On November 19, 2015, Montiel informed Carol that the HOCOA board members would not appear for their depositions scheduled for November 20, 2015.
*605 On November 23, 2015, during a conference call with the arbitrator and Carol, Montiel apparently raised an issue with regard to the payment of the arbitrator's fee, a matter that the other participants in the call thought had been settled earlier. Because there now existed a question as to the payment of the arbitrator's fee, the arbitration proceeding scheduled for December 10 and 11, 2015, was canceled.
On December 1, 2015, the HOCOA and its board members moved the trial court, in case no. CV-2015-900849, pursuant to Rule 60(b), Ala. R. Civ. P., to take jurisdiction of the case again and to interpret the settlement agreement. The HOCOA and its board members argued that Carol had failed to comply with the terms of the settlement agreement by failing to take certain requisite steps before filing her demand for arbitration, such as reporting a violation to the board and giving the board a reasonable opportunity to investigate the violation and a reasonable opportunity to cure the violation. The HOCOA and its board members further asserted that Carol was seeking to avoid paying her proper share of the arbitrator's fee, that she had improperly named Fullove in her statement of claims in arbitration even though he was neither a defendant in case no. CV-2015-900849 nor a party to the settlement agreement, and that she and Jerry had engaged in abuse of process by demanding arbitration and attempting to manipulate the HOCOA into buying Carol's office unit for $150,000. The HOCOA and its board members requested that the trial court enter an order granting their motion asking the trial court to exercise jurisdiction under Rule 60(b) ; interpreting the settlement agreement; and enjoining Carol from initiating an arbitration proceeding until she had satisfied certain conditions precedent requiring that she report any violations and that the HOCOA be given adequate time to investigate and cure any violations found to exist.
On December 4, 2015, the HOCOA filed its complaint and petition to enforce the settlement agreement. That action was assigned case no. CV-2015-901891. The HOCOA essentially reiterated the contentions set forth in its Rule 60(b) motion and sought an order requiring that Carol comply with the provisions of the settlement agreement; requiring Carol and the HOCOA each to pay one-half of any fees or costs associated with arbitration; preventing Carol from filing additional actions without first complying with the settlement agreement; and awarding the HOCOA compensation for Carol's alleged abuse of process, i.e., demanding arbitration in an attempt to manipulate the HOCOA into buying her office unit.
On December 23, 2015, Carol filed her response in opposition to the Rule 60(b) motion filed by the HOCOA and its board members in case no. CV-2015-900849. On January 6, 2016, the trial court conducted a hearing on the HOCOA and the board members' Rule 60(b) motion. The HOCOA and its board members requested that the trial court rule on the issue of arbitrator compensability so that the arbitration could proceed to an adjudication of their motions to dismiss Carol's claims in arbitration. The following exchange occurred on the record:
"[Attorney for the HOCOA]: And I would represent to the Court ... that Carol Blevins has yet to notify the [HOCOA] of anything that she's complaining about.... And so what we're asking the Court to do is look at the settlement that the parties entered into and to insure that the parties-all parties-including Carol Blevins follow that settlement as reflected. We were in an arbitration before Phil Adams from Opelika who the parties agreed to *606 be arbitrator. We filed substantial motions to dismiss with backup documents. But Mr. Adams said I can't proceed unless all of y'all are in agreement on how his fees would be paid. It's our position that the settlement agreement is real clear. It says, it should be split equally. Mr. Blevins wants to interpret it as, he keep[s] naming extra people; and somehow we are responsible for 80 percent of the cost. So Phil Adams said, I'm doing nothing until this is resolved. That's one of the issues we need the Court to be clear with an order-
"[The Court]: I always thought it was up to the arbitrator to resolve issues of arbitrability.
"....
"[Attorney for the HOCOA]: We think he had jurisdiction to rule on the motion to dismiss.... If your Honor determines that that settlement agreement, as agreed to by the parties, where it uses the term, equally, requires a 50/50 split, we will take it back to Judge Adams. And then we will have clear guidance on how we're to pay him going forward and hopefully get his rulings on our motions. So we can't do anything without Court assistance.... So we ask the Court to consider the settlement agreement reflected in the documents-I guess it's not in dispute-and enter an appropriate order that lays out clearly, from the agreement, what the parties-
"[The Court]-is everybody here in agreement that the thing needs to be arbitrated?
"[Attorney for the HOCOA]: Our position is that it will not be arbitrated because they haven't complied-
"[The Court]: -your hang up is the fees, who's going to pay for it.
"[Attorney for the HOCOA]: Right. He can rule on the motion to dismiss if we have the fees decided by your Honor because we're saying that Carol Blevins didn't even comply with step one. But if you enter an order on that, we go back to Judge Adams. And then he's resolving those issues....
"[The Court]: -look. Tell me if I'm wrong. The arbitrator is supposed to decide the arbitrability of the dispute.
"[Attorney for the HOCOA] He would be able to with the motions to dismiss, yes sir.
"[The Court]: As I'm getting back to, all this really is, is a dispute over who is going to pay the fee.
"[Attorney for the HOCOA]: And if your honor enters that then we go back before Judge Adams on the issues of the matter.
"[The Court]: You know, Phil Adams is the arbitrator. Y'all all want to arbitrate. The dispute is over his fees. That's for him to decide, to interpret the arbitration agreement. The arbitration agreement provides for who is going to pay the costs. And its up to him to determine what that means."
Following the hearing, the trial court, on January 7, 2016, entered the following order:
"Defendants filed a post trial motion seeking enforcement of a settlement agreement. The parties agree that the matter should be arbitrated but disagree on who bears the burden of the arbitrator's fees. It is for the arbitrator to construe the terms of the agreement and thus to decide who bears the brunt of his fees."
The complaint filed by the HOCOA in case no. CV-2015-901891 seeking enforcement of the settlement agreement was not dismissed.
In April 2016, the parties agreed to move forward with the arbitration proceeding with attorney Randy James serving *607 as the new arbitrator. On April 19, 2016, Montiel confirmed in an e-mail to Carol that the HOCOA and its board members intended on proceeding with arbitration and that they would be asking the arbitrator to rule on their pending motions to dismiss the arbitration. On July 6, 2016, following a hearing on the HOCOA and the board members' pending motions to dismiss Carol's statement of claims in arbitration, the arbitrator denied the motions to dismiss.
On August 3, 2016, Carol filed her amended statement of claims in arbitration adding claims of conversion, fraud, abuse of process, and malicious prosecution. On August 9, 2016, the HOCOA amended its complaint in case no. CV-2015-901891, requesting that the trial court enforce the settlement agreement reached in case no. CV-2015-900849; prohibit Carol from naming nonsignatories to the settlement agreement and volunteer board members as defendants; prohibit Carol from bringing in arbitration claims that accrued prior to August 12, 2015, the date case no. CV-2015-900849 was dismissed with prejudice; and interpret the settlement agreement to determine issues relating to its validity. On August 10, 2016, the HOCOA moved the trial court to stay the arbitration proceeding pending before arbitrator James to allow the trial court to rule on the pending issues raised in both the HOCOA's complaint and amended complaint seeking to enforce the settlement agreement. On August 18, 2016, the trial court entered an order granting the HOCOA's motion to stay arbitration.[2]
On December 5, 2016, Carol sued board members Nelson, Rousso, and Fullove, individually and in their official capacities as board members, asserting claims of breach of fiduciary duty, conspiracy, breach of contract, and wantonness and seeking specific performance of the HOCOA's bylaws grounded in the board members' alleged "failure to address water damage caused to Carol's office unit resulting from faulty roof work directed by them" and "their disregard of requests for access to corporate records pertaining to the roof work." Carol demanded a jury trial and requested both compensatory damages and punitive damages. That action was assigned case no. CV-2016-901627.
On January 6, 2017, the board members moved the trial court, pursuant to Rule 12(b), Ala. R. Civ. P., to dismiss case no. CV-2016-901627. The board members argued, among other things, that they were not proper defendants and that they were entitled to immunity under the Volunteer Service Act. Also on January 6, 2017, the board members moved the trial court to stay the proceedings in case no. CV-2016-901627 until the trial court ruled on the pending issues in case no. CV-2015-901891. It does not appear from the record that the trial court ruled upon the motion to stay the proceedings.
*608 On January 10, 2017, Carol amended her complaint in case no. CV-2016-901627 to assert additional instances of the board members' alleged wrongful and ongoing denial of access to the HOCOA's corporate records. On February 8, 2017, the board members moved the trial court to dismiss Carol's amended complaint, again asserting that they were not proper defendants and that they were entitled to immunity under the Volunteer Service Act.
On March 9, 2017, Carol filed her second amended complaint in case no. CV-2016-901627, adding as defendants the HOCOA, Montiel, and Montiel's law firm Mark G. Montiel, P.C. ("Montiel P.C."). Carol set forth additional facts in the second amended complaint alleging that the HOCOA and the board members had wasted corporate funds by installing a sprinkler system on a hillside not owned or controlled by the HOCOA. Carol asserted against all defendants claims of nuisance, breach of fiduciary duty, breach of contract, wantonness, conversion, fraud, abuse of process, and malicious prosecution. On April 10, 2017, the defendants moved the trial court to dismiss Carol's second amended complaint pursuant to Rule 12(b), Ala. R. Civ. P.
On April 14, 2017, Carol moved the trial court to enforce the settlement agreement and for injunctive relief. Carol alleged that the defendants, including counsel, had repeatedly obstructed the arbitration process by "filing frivolous actions in various courts." Carol sought an order from the trial court directing the HOCOA to immediately dismiss its complaint filed in case no. CV-2015-901891; ordering the defendants, including Montiel and Montiel P.C., to immediately proceed with arbitration; and barring any further "filings" by the defendants against her without permission of the trial court.
On April 28, 2017, the HOCOA and its board members moved the trial court pursuant to Rule 42(a), Ala. R. Civ. P., to consolidate cases nos. CV-2015-900849, CV-2015-901891, and CV-2016-901627. On May 1, 2017, the HOCOA and its board members filed a response in opposition to Carol's motion to enforce the settlement agreement, arguing that the trial court lacked the jurisdiction to rule on the motion. They further argued that the arbitration proceeding had been stayed by the trial judge in case no. CV-2015-901891 and that an order directing the parties to arbitrate the claims at this point would conflict with the court's prior order.
On May 3, 2017, the trial court conducted a hearing on Carol's motion to enforce the settlement agreement and for injunctive relief, as well as the defendants' motion to dismiss Carol's second amended complaint in case no. CV-2016-901627 and the motion to consolidate the three cases. Following the hearing, the trial court, on May 3, 2017, entered an order consolidating the three cases; dismissing all claims asserted against Montiel and Montiel P.C.; dissolving the order staying arbitration that had been entered in case no. CV-2015-901891; and ordering the parties to proceed with arbitration "forthwith," with the caveat that any "further attempts to block arbitration are probably going to meet with sanctions." On May 16, 2017, the HOCOA and the board members filed three separate appeals, appealing as to case no. CV-2015-900849,[3] case no. CV-2015-901891, *609 and case no. CV-2016-901627.
Standard of Review
"This Court's standard of review on an appeal from a trial court's order granting or denying a motion to compel arbitration is well settled. Bowen v. Security Pest Control, Inc., 879 So.2d 1139, 1141 (Ala. 2003). A direct appeal is the proper procedure by which to seek review of such an order, Rule 4(d), Ala. R. App. P., and this Court will review de novo the trial court's grant or denial of a motion to compel arbitration. Bowen, 879 So.2d at 1141."
Alabama Title Loans, Inc. v. White, 80 So.3d 887, 891-92 (Ala. 2011).
We note that these cases are not before this Court from the conventional appeal of an order granting or denying a motion to compel arbitration. Rather, the arbitration proceeding was pending pursuant to the parties' submission of the matter to arbitration and was subsequently stayed by the trial court upon motion of the HOCOA. Carol sought an order from the trial court in her "Motion to Enforce Settlement Agreement and Request for Injunctive Relief and Sanctions" requiring the HOCOA and its board members to proceed immediately to arbitration. Carol asserted the existence of an arbitration provision in the settlement agreement and asserted that a dispute had arisen between the parties, that the parties had agreed to submit the dispute to arbitration, that arbitration had commenced, and that that arbitration had been stayed. The trial court entered an order dissolving the stay of arbitration that had been entered in case no. CV-2015-901891 and ordering, in case no. CV-2016-901627, the parties to arbitrate "forthwith." It is from those orders that the HOCOA and its board members appeal. " 'This Court will look at the substance of a motion rather than its title, to determine how that motion is to be considered under the Alabama Rules of Civil Procedure.' " Brasfield & Gorrie, L.L.C. v. Soho Partners, L.L.C., 35 So.3d 601, 604 (Ala. 2009) (quoting Pontius v. State Farm Mut. Auto. Ins. Co., 915 So.2d 557, 562-63 (Ala. 2005) ). We will treat Carol's motion as one to compel arbitration. Accordingly, we conclude that the appeals as to cases nos. CV-2015-901891 and CV-2016-901627 are properly before us pursuant to Rule 4(d), Ala. R. App. P. See Brasfield & Gorrie, supra.
Discussion
The HOCOA and its board members argue that Fullove was not named as a defendant in case no. CV-2015-900849 and, therefore, was not a party to the settlement agreement containing the arbitration provision. They contend that, because Fullove was not a party to the settlement agreement, he is not bound by the arbitration provision and cannot be required to arbitrate the claims asserted against him. Further, the HOCOA and its board members argue that Nelson and Rousso did not agree to submit to arbitration in their individual capacities and that *610 the arbitration provision does not contemplate their being bound by the arbitration provision in their individual capacities. Thus, the HOCOA and its board members argue that Nelson and Rousso cannot be ordered to arbitrate the claims asserted against them in their individual capacities.
The relevant portion of the arbitration provision provides:
"[I]f Carol challenges the Board's decision as a clear violation of the governing documents, the parties consent that any such dispute would be submitted to binding arbitration for a prompt and final resolution. The requirement to arbitrate would apply equally to any claims by Carol against any party to this action and any future members of the Board for actions taken in that capacity."
Carol amended her complaint in case no. CV-2015-900849 to add board members Nelson, Arnberg, and Rousso as defendants in both their official and individual capacities. While Carol's action was pending, Arnberg came off the board and Fullove was appointed to the board by Nelson and Rousso. It does not appear that Carol amended her complaint to add Fullove as a defendant. Following her demand for arbitration, Carol submitted her statement of claims in arbitration to the arbitrator, naming as defendants the HOCOA and board members Nelson, Rousso, and Fullove in both their individual capacities and their official capacities as board members.
The language in the provision requiring any "party to this action and any future members of the Board for actions taken in that capacity" to arbitrate claims brought by Carol notwithstanding, Fullove argues that he cannot be bound by the provision because he was not a defendant in case no. CV-2015-900849 and, therefore, not a party to the provision. Nelson and Rousso argue that they cannot be bound to arbitrate in their individual capacities because, they say, the arbitration provision simply does not require them to arbitrate disputes in their individual capacities.
Arbitration is a matter of contract; therefore, a court cannot require a party to arbitrate claims the party has not agreed to arbitrate. MTA, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 114 So.3d 27 (Ala. 2012). Thus, the general rule is that "a nonsignatory to an arbitration agreement cannot be forced to arbitrate [its] claims." Cook's Pest Control, Inc. v. Boykin, 807 So.2d 524, 526 (Ala. 2001). This Court has stated:
" 'The question whether an arbitration provision may be used to compel arbitration of a dispute between a nonsignatory and a signatory is a question of substantive arbitrability (or, under the Supreme Court's terminology, simply "arbitrability"). In First Options [of Chicago, Inc. v. Kaplan ], 514 U.S. [938,] 943-46 [ (1995) ], the Supreme Court analyzed the question whether an arbitration agreement binds a nonsignatory as a question of arbitrability. See also Howsam [v. Dean Witter Reynolds ], 537 U.S. [79,] 84 [ (2002) ] (noting that in First Options the Supreme Court held that the question "whether the arbitration contract bound parties who did not sign the agreement" is a question of arbitrability for a court to decide). More recently, the United States Court of Appeals for the Eighth Circuit succinctly addressed the threshold issue before us. In Eckert/Wordell Architects, Inc. v. FJM Properties of Willmar, LLC, 756 F.3d 1098 (8th Cir. 2014), a nonsignatory sought to compel arbitration of a dispute with a *611 signatory, as in this case. The court stated:
" ' "Whether a particular arbitration provision may be used to compel arbitration between a signatory and a nonsignatory is a threshold question of arbitrability. See Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84-85, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002) (delineating potentially dispositive threshold issues between 'questions of arbitrability' and 'procedural questions'). We presume threshold questions of arbitrability are for a court to decide, unless there is clear and unmistakable evidence the parties intended to commit questions of arbitrability to an arbitrator. Id. at 83, 123 S.Ct. 588 ; Express Scripts, Inc. v. Aegon Direct Mktg. Servs., Inc., 516 F.3d 695, 701 (8th Cir. 2008). We have previously held the incorporation of the AAA [American Arbitration Association] Rules into a contract requiring arbitration to be a clear and unmistakable indication the parties intended for the arbitrator to decide threshold questions of arbitrability.... Eckert Wordell's drafting of the architectural services contract here to incorporate the AAA Rules requires the same result."
" ' 756 F.3d at 1100. See also Knowles v. Community Loans of America, Inc. (No. 12-0464-WS-B, Nov. 20, 2012) (S.D. Ala. 2012) (not reported in F. Supp. 2d) ("A question as to 'whether the arbitration contract bound parties who did not sign the agreement' is one that 'raises a "question of arbitrability" for a court to decide.' " (quoting Howsam, 537 U.S. at 84, 123 S.Ct. 588 ) ).
" 'Like the Eighth Circuit, we have held "that an arbitration provision that incorporates rules that provide for the arbitrator to decide issues of arbitrability clearly and unmistakably evidences the parties' intent to arbitrate the scope of the arbitration provision.' CitiFinancial Corp. v. Peoples, 973 So.2d 332, 340 (Ala. 2007). See also Joe Hudson Collision Ctr. v. Dymond, 40 So.3d 704, 710 (Ala. 2009) (concluding that an arbitrator decides issues of substantive arbitrability when the arbitration provision incorporated the same AAA rule as in the present case); and Wells Fargo Bank, N.A. v. Chapman, 90 So.3d 774, 783 (Ala. Civ. App. 2012) (same). The relevant AAA rule incorporated by the arbitration provision provides: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." Thus, although the question whether an arbitration provision may be used to compel arbitration between a signatory and a nonsignatory is a threshold question of arbitrability usually decided by the court, here that question has been delegated to the arbitrator. The arbitrator, not the court, must decide that threshold issue.'
"[ Anderton v. Practice-Monroeville, P.C.,] 164 So.3d [1094] at 1101-02 [ (Ala. 2014) ]. Thus, the law in Alabama is such that a trial court considering a motion to compel arbitration should resolve both waiver and nonsignatory issues unless the subject arbitration provision clearly and unmistakably indicates that those arguments should instead be submitted to the arbitrator."
Federal Ins. Co. v. Reedstrom, 197 So.3d 971, 975-76 (Ala. 2015).
Here, the arbitration provision contained in the settlement agreement is completely silent as to whether nonsignatory issues are to be decided by the trial court or *612 submitted to the arbitrator. Thus, based on this Court's decisions in Anderton v. Practice-Monroeville, P.C., 164 So.3d 1094 (Ala. 2014), and Reedstrom, we conclude that the issues whether Fullove is bound by the arbitration provision and whether Nelson and Rousso are bound in their individual capacities by the arbitration provision are issues to be decided by the trial court before the dispute is submitted to arbitration. Accordingly, we reverse the trial court's order in case no. CV-2016-901627 to the extent it ordered the parties to arbitrate without first reaching a determination as to those issues.
The HOCOA and its board members next argue that the trial court erred in ordering the parties to arbitrate because, they say, Carol failed to satisfy certain conditions precedent to arbitration. Specifically, the HOCOA and its board members contend that Carol failed to properly report alleged violations to the board; failed to give the board a reasonable opportunity to investigate and determine if there was indeed a violation; and failed to give the board a reasonable opportunity to take action and to cure the violation, if it found one to exist.
Regarding the issue whether the trial court or the arbitrator determines that certain conditions precedent to an obligation to arbitrate have been satisfied, this Court has stated:
" ' "Procedural arbitrability" ... involves questions that grow out of the dispute and bear on its final disposition, e.g., defenses such as notice, laches, estoppel, and other similar compliance defenses; such questions are for an arbitrator to decide.' Brasfield & Gorrie, L.L.C. v. Soho Partners, L.L.C., 35 So.3d 601, 604 (Ala. 2009). ' " '[I]n the absence of an agreement to the contrary, issues of ... procedural arbitrability, i.e., whether prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met are for the arbitrators to decide.' " ' Id. at 606 (quoting Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 85, 123 S.Ct. 588, 154 L.Ed. 2d 491 (2002), quoting in turn Revised Uniform Arbitration Act of 2002, § 6, comment 2, 7 U.L.A. 13 (Supp. 2002)(emphasis omitted) )."
Selzer Auto., L.P. v. Cumberland Plastic Sys., LLC, 70 So.3d 272, 276 (Ala. 2010). See Brasfield, 35 So.3d at 606-607 (holding that question whether contractor satisfied conditions precedent to arbitration, which required contractor to submit claims first to architect and then to mediation before invoking the arbitration process, was a matter of procedural arbitrability to be decided by the arbitrator).
The issue raised by the HOCOA and its board members as to whether Carol failed to properly satisfy the conditions precedent to invoking the arbitration process by failing to report alleged violations to the board and then giving the board an opportunity to investigate and cure involve issues of procedural arbitrability that are to be decided by the arbitrator. Accordingly, the trial court did not commit reversible error to the extent that it ordered that those issues be submitted to arbitration.
The HOCOA and its board members next argue that the arbitration provision contained in the settlement agreement is unenforceable because, they say, Carol presented no evidence indicating that the settlement agreement evidences a transaction involving interstate commerce. A party seeking to compel arbitration has the burden of establishing the existence of a contract calling for arbitration and that the contract evidences a transaction affecting interstate commerce. SSC Montgomery Cedar Crest Operating Co. v. Bolding, 130 So.3d 1194 (Ala. 2013).
*613 A party waives any right to object to the validity of an arbitration provision calling for the arbitration of certain claims once that party agrees to arbitrate those claims. All American Termite & Pest Control, Inc. v. Walker, 830 So.2d 736 (Ala. 2002). See also Leon C. Baker, P.C. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 821 So.2d 158 (2001). Here, the parties settled the claims made the basis of case no. CV-2015-900849 by agreeing to arbitrate any further disputes regarding alleged violations of the HOCOA's governing documents. Following the dismissal of case no. CV-2015-900849, Carol continued to assert violations of the governing documents and made a demand for arbitration. The HOCOA and its board members agreed to the submission of Carol's claims to arbitration. Although the HOCOA and its board members did object to certain issues being submitted to the arbitrator for determination, arguing that those issues instead should be determined by the trial court, they did not object to the submission of the claims to arbitration. The HOCOA and its board members agreed upon two different arbitrators and also sought the enforcement of the settlement agreement containing the arbitration provision by initiating case no. CV-2015-901891. Accordingly, we conclude that because the HOCOA and its board members agreed to the submission of the claims raised in this matter to the now pending arbitration proceeding, they have waived their right to object to the validity of the arbitration provision.
Conclusion
The appeal in case no. CV-2015-900849 is dismissed. See note 3, supra. To the extent that the HOCOA and its board members have appealed the trial court's order dissolving the stay of arbitration in case no. CV-2015-901891, that order is affirmed. Finally, the order appealed from case no. CV-2016-901627 is affirmed in part and reversed in part and the case is remanded to the trial court.
1160725-APPEAL DISMISSED.
1160738-AFFIRMED.
1160739-AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
Stuart, C.J., and Shaw, Main, Wise, Bryan, and Sellers, JJ., concur.
Parker, J., recuses himself.

Article IX.D.2. of the HOCOA's declaration of condominium required that a change of membership in the HOCOA be accomplished by the recording in the probate court of a deed or other instrument establishing record title to a unit and delivery to the HOCOA of a certified copy of that instrument.

It should be noted that the trial court's perceived reversal of itself in staying the arbitration proceeding after first ordering the parties to proceed to arbitration is explainable based on the fact that different trial judges were assigned in case no. CV-2015-900849 and in case no. CV-2015-901891. When the HOCOA and its board members filed their motion to enforce the settlement agreement in case no. CV-2015-900849, that motion was assigned to the original trial judge in case no. CV-2015-900849. The motion to enforce the settlement agreement was adjudicated by the trial judge on January 7, 2016, when he ordered the parties to arbitration. However, when the arbitrator denied the HOCOA's and its board members' motions to dismiss Carol's claims in arbitration, the HOCOA came back to court to amend its complaint filed in case no. CV-2015-901891. That action was pending before a different trial judge. The HOCOA moved that trial judge to stay the pending arbitration proceeding, and the trial judge did.

As noted earlier, on August 12, 2015, Carol moved the trial court to voluntarily dismiss case no. CV-2015-900849 against Mitchell Properties, Malone Staffing, and the intervenor HOCOA and its board members, stating that the parties had reached a settlement of the issues before the trial court and that the aforementioned defendants had consented to the dismissal of the action. The trial court entered an order dismissing Carol's action with prejudice. The HOCOA and its board members now purport to appeal from the dismissal of this case. "Only adverse rulings by the trial court are reviewable on appeal." Lewis v. Providence Hosp., 483 So.2d 398 (Ala. 1986). The voluntary dismissal of Carol's case favored the HOCOA and its board members, who were not aggrieved or prejudiced in any way by the dismissal. Therefore, the HOCOA and its board members have not suffered an adverse ruling from which they could appeal. See Williams v. Continental Oil Co., 387 So.2d 130, 131 (Ala. 1980) (stating that "[d]efendant cannot appeal from dismissal of plaintiff's case"). Accordingly, the appeal in case no. CV-2015-900849 is due to be dismissed.